IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CHRISTOPHER ZYDA, On Behalf of Himself and All Others Similarly Situated, | ) ) ) ) | CIVIL 16-00591 LEK |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) ) | |
| FOUR SEASONS HOTELS AND RESORTS FOUR SEASONS HOLDINGS INC.; FOUR SEASONS HUALALAI RESORT; HUALALAI RESIDENTIAL, LLC (dba HUALALAI REALTY); HUALALAI INVESTORS, LLC; KAUPULEHU MAKAI VENTURE; HUALALAI DEVELOPMENT COMPANY; HUALALAI VILLAS & HOMES; HUALALAI INVESTORS, LLC; HUALALAI RENTAL MANAGEMENT, LLC; and DOES 1-100, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## ORDER DENYING PLAINTIFFS' MOTION FOR REMAND

On November 14, 2016, Plaintiff Christopher Zyda, on behalf of himself and all others similarly situated ("Zyda" and collectively "Plaintiffs"), filed a Motion for Remand ("Motion"). [Dkt. no. 11.] Defendants Four Seasons Hotels Ltd., Four Seasons Holdings, Inc., Hualalai Investors, LLC, Hualalai Residential, LLC, and Hualalai Rental Management, LLC (collectively "Four Seasons" or "Defendants") filed their memorandum in opposition on December 6, 2016, and Plaintiffs filed their reply on December 13, 2016. [Dkt. nos. 24, 25.] The Court finds this matter suitable for disposition without a hearing pursuant to Rule

LR7.2(d) of the Local Rules of Practice of the United States
District Court for the District of Hawai`i ("Local Rules").
After careful consideration of the Motion, supporting and
opposing memoranda, and the relevant legal authority, Plaintiffs'
Motion is HEREBY DENIED for the reasons set forth below.

**BACKGROUND**

On October 2, 2015, Plaintiffs filed their Class Action
Complaint for Damages Declaratory and Injunctive Relief in the
Circuit Court of the Third Circuit, State of Hawai`i
("Complaint").  [Notice of Removal, filed 11/1/16 (dkt. no. 1),
Decl. of William Meheula ("Meheula Decl."), Exh. 1 (Complaint).]
On October 14, 2015, Plaintiffs filed their First Amended Class
Action Complaint for Damages Declaratory and Injunctive Relief
("Amended Complaint").  [Id., Exh. 2 (Amended Complaint).]

Defendants own or manage the Hualalai Resort and
Hualalai Club on Hawai`i Island in the State of Hawai`i.
[Amended Complaint at ¶¶ 5-6.]  Plaintiffs, property owners
within the Hualalai Resort, allege that Defendants made various
promises regarding membership to the Hualalai Club to induce home
purchases, but that, after they had committed substantial
resources, "Defendants failed to maintain and provide adequate
facilities to handle the growing population and increased usage
of the resort."  [Id. at ¶¶ 10-11.]  Instead, Defendants, *inter
alia*:  continued to build homes; increased the fees for

unaccompanied guests at the Hualalai Club, which has affected property values; and continue to operate the Hualalai Resort and Hualalai Club "in secrecy, and fail and refuse to act openly and in good faith" with regard Plaintiffs' rights. [<u>Id.</u> at ¶¶ 12-14.]

Plaintiffs bring state law claims for: violation of the Condominium Property Act, Haw. Rev. Stat. § 514B ("Count I"); [<u>id.</u> at ¶¶ 24-29;] violation of the Uniform Land Sales Practices Act, Haw. Rev. Stat. § 484 (Count II"); [<u>id.</u> at ¶¶ 30-36;] unfair methods of competition, in violation of Haw. Rev. Stat. § 480-2 ("Count III"); [<u>id.</u> at ¶¶ 37-40;] promissory estoppel/detrimental reliance ("Count IV"); [<u>id.</u> at ¶¶ 41-44;] violation of the duty of good faith and fair dealing ("Count V"); [<u>id.</u> at ¶¶ 45-47;] negligent misrepresentation ("Count VI"); [<u>id.</u> at ¶¶ 48-54;] estoppel ("Count VII"); [<u>id.</u> at ¶¶ 55-58;] unjust enrichment ("Count VIII"); [<u>id.</u> at ¶¶ 59-61;] organized crime, pursuant to Haw. Rev. Stat. Chapter 842 ("Count IX"); [<u>id.</u> at ¶¶ 62-65;] and breach of fiduciary and other common law duties ("Count X") [<u>id.</u> at ¶¶ 66-68]. Plaintiffs seek: "[g]eneral, special, triple, and consequential damages"; attorneys' fees; prejudgment interest; punitive damages; injunctive and declaratory relief; a forensic audit; disgorgement; rescission; a democratically elected board of homeowners to govern the Hualalai Club and Hualalai Community Association; "regular financial transparency and disclosure

requirements"; elimination of guest fees; elimination of
definition of "family members" as it relates to admission to the
Hualalai Resort and Hualalai Club; no new home sales until
current homeowners agree they have constructed enough facilities;
"the replacement of the existing Hualalai Resort management
team"; and any other relief the Court "deem[s] just and proper."
[Id., Prayer for Relief ¶¶ 1-15.]  On October 13, 2016, the state
court granted class certification in the instant matter ("Class
Certification Order").[1]  [Meheula Decl., Exh. 3 (Class
Certification Order).]  On November 1, 2016, Defendants removed
the case to this Court pursuant to the Class Action Fairness Act
("CAFA"), 28 U.S.C. § 1332(d)(2)(A).  [Notice of Removal at
¶¶ 16-20.]

### STANDARD

> In 2005, Congress passed CAFA to permit
> defendants to remove class actions to federal
> court if they meet three requirements:  there must
> be minimal diversity of citizenship between the
> parties; the proposed class must have at least 100
> members; and the aggregated amount in controversy

---

[1] The Class Certification Order defines the certified class
as:

> All purchasers of residential properties in the
> Hualalai Resort from 1995 to the present who are
> members of the Hualalai Club and whose properties
> are subject to a guest fee or other restriction on
> the use of Hualalai Resort amenities for any
> family member or guest (including rental guest) of
> such owner.

[Class Certification Order at ¶ 2.]

> must equal or exceed the sum or value of
> $5 million.  28 U.S.C. § 1332(d); Class Action
> Fairness Act of 2005, Pub. L. No. 109-2, § 4, 119
> Stat. 4, 12 (2005).

Jordan v. Nationstar Mortg., LLC, 781 F.3d 1178, 1182 (9th Cir.

2015).

> The mechanics and requirements for removal
> are governed by 28 U.S.C. § 1446.  Section 1446(b)
> "identifies two thirty-day periods for removing a
> case."  Carvalho v. Equifax Info. Servs., LLC, 629
> F.3d 876, 885 (9th Cir. 2010).  "The first thirty-
> day removal period is triggered if the case stated
> by the initial pleading is removable on its face."
> Id. (internal quotation marks omitted).  "The
> second thirty-day removal period is triggered if
> the initial pleading does not indicate that the
> case is removable, and the defendant receives 'a
> copy of an amended pleading, motion, order or
> other paper' from which removability may first be
> ascertained."  Id. (quoting § 1446(b)).

Kuxhausen v. BMW Fin. Servs. NA LLC, 707 F.3d 1136, 1139 (9th

Cir. 2013).

> The Ninth Circuit has also held,

> "that the thirty day time period [for removal]
> . . . starts to run from defendant's receipt of
> the initial pleading only when the pleading
> affirmatively reveals on its face the facts
> necessary for federal court jurisdiction."  Harris
> v. Bankers Life & Cas. Co., 425 F.3d 689, 691-92
> (9th Cir. 2005) (internal quotation marks
> omitted).  We also recently held in Roth v. CHA
> Hollywood Medical Center, L.P., that the two 30-
> day periods are not the exclusive periods for
> removal.  720 F.3d 1121, 1124-25 (9th Cir. 2013).
> In other words, as long as the complaint or "an
> amended pleading, motion, order or other paper"
> does not reveal that the case is removable, the
> 30-day time period never starts to run and the
> defendant may remove at any time.

<u>Rea v. Michaels Stores Inc.</u>, 742 F.3d 1234, 1237-38 (9th Cir. 2014) (alterations in <u>Rea</u>).

**<u>DISCUSSION</u>**

There is no dispute that minimal diversity exists in the instant matter, and that the proposed class consists of at least one hundred members. Moreover, there is no dispute that the amount in controversy exceeds $5 million. The only issues are when Defendants knew or should have known that Plaintiffs' claims exceeded this jurisdictional threshold, and whether the Notice of Removal was untimely. Plaintiffs argue that the Court must determine "[w]hether Four Seasons could (and did) ascertain that the amount in controversy exceeded CAFA's $5 million dollar threshold more than 30 days before its November 1, 2016, Notice of Removal[.]" [Mem. in Supp. of Motion at 10.] Plaintiffs present four documents or series of documents that they believe alerted Defendants to the amount in controversy in the instant matter, and the Court will address each of these in turn.

**I.    <u>Pre-Complaint Information</u>**

First, Plaintiffs argue that Hualalai is "[p]opulated exclusively by multi-millionaires and billionaires" and that, because of the nature of the development itself, "a dispute with even one homeowner . . . would indicate to anyone remotely familiar with the project that the value of claims exceeds five million dollars." [<u>Id.</u> at 10-11.] Moreover, Plaintiffs argue

6

that they informed Defendants of their belief that certain
policies would adversely affect property values before filing the
Complaint, and that, given "the value of individual homes at
Hualalai," the fact that "more than 300 homes are potentially
impacted," and Plaintiffs "allegation that Four Season's [sic]
policies significantly impacted property values" put Defendants
"on notice of the potential value of this class action before it
even was filed." [Id. at 11-12 (footnotes omitted).]

Plaintiffs appear to suggest that because extremely
wealthy people live at Hualalai, and because property is very
expensive there, Defendants should have assumed that any suit
involving Hualalai homeowners would exceed CAFA's amount in
controversy requirement. The Ninth Circuit has stated that
"defendants need not make extrapolations or engage in guesswork,"
but they must "'apply a reasonable amount of intelligence in
ascertaining removability.'" Kuxhausen, 707 F.3d at 1140
(quoting Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 206 (2d
Cir. 2001)). It is clear to the Court that guesswork includes
making assumptions about an amount in controversy based simply on
the wealth of the individuals involved. Further, Plaintiffs'
argument regarding information received by Defendants before the
Complaint was even filed is directly contradicted by Ninth
Circuit case law. In Carvalho v. Equifax Information Services,
LLC, the Ninth Circuit stated that,

> [i]t is axiomatic that a case cannot be removed
> before its inception.  If the second paragraph of
> section 1446(b) were meant to include as "other
> paper" a document received by the defendant months
> before receipt of the initial pleading, the
> requirement that the notice of removal "be filed
> within thirty days after receipt by the defendant"
> of the "other paper" would be nonsensical.
> Moreover, that the second paragraph lists "an
> amended pleading, motion, order" – all documents
> which logically cannot predate the initial
> pleading – before "or other paper" leads us to
> conclude that "other paper" does not include any
> document received prior to receipt of the initial
> pleading.  <u>See</u> <u>United States v. Williams</u>, 553 U.S.
> 285, 294, 128 S. Ct. 1830, 170 L. Ed. 2d 650
> (2008) (noting that "the commonsense canon of
> *noscitur a sociis* . . . counsels that a word is
> given more precise content by the neighboring
> words with which it is associated").  Accordingly,
> we conclude that any document received prior to
> receipt of the initial pleading cannot trigger the
> second thirty-day removal period.

629 F.3d 876, 885-86 (9th Cir. 2010) (alterations in <u>Carvalho</u>).

Neither the wealth of the Plaintiffs nor information provided to

Defendants prior to the filing of the Complaint triggered the

thirty-day removal period, and the Court must reject Plaintiffs'

argument.

## II.  <u>The Class Complaint</u>

Next, Plaintiffs argue that the Amended Complaint

provided Defendants with sufficient information for them to

ascertain that the amount in controversy exceeded $5 million.

[Mem. in Supp. of Motion at 12-14.]  First, Plaintiffs cite a

number of clauses in the Amended Complaint, none of which contain

any direct numbers about their damages or potential losses.  [<u>Id.</u>

8

at 12-13.]  Second, Plaintiffs recite the claims against
Defendants, and state that "[w]hen relief rescission,
disgorgement, unjust enrichment, treble damages, punitive
damages, injunctive relief, and attorneys' fees are sought for a
class of 300 homeowners for properties ranging between $2 million
and $20 million dollars, it is preposterous to believe Four
Seasons did not ascertain that the amount in controversy exceed
CAFA's $5 million threshold."  [Id. at 14.]

Here, "[n]othing in the [Amended Complaint] indicates
. . . the amount demanded by each putative class member," see
Carvalho, 629 F.3d at 886 (emphasis omitted), or the value of
each class member's home.  Instead, Plaintiffs again rely on
Plaintiffs' general wealth to insinuate that Defendants should
have guessed the amount in controversy exceeds the CAFA
threshold.  The Ninth Circuit has stated:

> The fact remains, however, that we "don't charge
> defendants with notice of removability until
> they've received a paper that gives them enough
> information to remove."  Durham [v. Lockheed
> Martin Corp.], 445 F.3d [1247,] 1251 [(9th Cir.
> 2006)].  This principle helps avoid a "Catch-22"
> for defendants desirous of a federal forum.  By
> leaving the window for removal open, it forces
> plaintiffs to assume the costs associated with
> their own indeterminate pleadings.  That is only
> fair after all, because – even under CAFA – "the
> burden is on the party removing the case from
> state court to show the exercise of federal
> jurisdiction is appropriate."  Lewis v. Verizon
> Commc'ns, Inc., 627 F.3d 395, 399 (9th Cir. 2010).

Kuxhausen, 707 F.3d at 1141; see also Graiser v. Visionworks of
Am., Inc., 819 F.3d 277, 285 (6th Cir. 2016) ("Accordingly, we
join our sister circuits and hold that, in CAFA cases, the
thirty-day clocks of § 1446(b) begin to run only when the
defendant receives a document **from the plaintiff** from which the
defendant can unambiguously ascertain CAFA jurisdiction.  Under
this bright-line rule, a defendant is not required to search its
own business records 'or perform an independent investigation
into a plaintiff's indeterminate allegations to determine
removability.'" (emphasis in Graiser) (quoting Cutrone v. Mortg.
Elec. Registration Sys., Inc., 749 F.3d 137, 285 (2d Cir.
2014))).  The Amended Complaint does not "affirmatively reveal[]
on its face" that the amount in controversy exceeds $5 million,
and Plaintiffs' argument must be rejected.  See Rea, 742 F.3d at
1238 (citation and internal quotations marks omitted).

**III. <u>Sullivan Declaration</u>**

        Plaintiffs also assert that a declaration by one of
Defendants' attorneys and a notification to potential bond
purchasers show that Defendants knew that the amount in
controversy exceeded the CAFA requirement.  [Mem. in Supp. of
Motion at 14-16.]

        In October 2016, Defendants' attorney, Barry Sullivan,
Esq., submitted a declaration ("Sullivan Declaration"), which
states:

> Further, discovery is necessary as to the very
> basis of one of Zyda's complaint [sic] as stated
> in the First Amended Complaint:  The resort
> Facilities can become overcrowded during certain
> peak/peak of peak seasons.  Zyda is advocating
> that the Club and Resort owner construct tens of
> millions in new facilities, apparently on land
> that he has not even bothered to identify and
> which obviously does not exist within the Resort,
> while Defendants propose that adherence to the
> Club Documents and implementation of policies
> authorized therein is both a permissible and an
> eminently rational response.  Moreover, Defendants
> have served Plaintiff with a First Request for
> Production of Documents, Exhibit I, and
> Plaintiff's responses are December 18, 2015
> (thirty days from November 16, 2015).  This
> discovery will bear heavily on the allegations
> made by Zyda and this Motion.

[Mem. in Supp. of Motion, Decl. of Terrance M. Revere ("Revere Decl."), Exh. 2 (Sullivan Decl.) at ¶ 11.]  Defendants submit that "[t]he 'tens of millions in new facilities' comment . . . was not taken from the [Amended Complaint], . . . and was made to support Defendants' need for discovery as to what Plaintiff meant by his allegation of, and not prayer for, 'failure to provide adequate facilities' allegations in the [Amended Complaint]." [Mem. Opp. at 9.]  Moreover, "[s]ubsequent discovery, namely Zyda's deposition . . . , confirmed that he was not pursuing construction of additional Club or Resort Facilities as a remedy." [Id. at 9-10.]  Thus, this statement related to a question that Defendants hoped to answer during discovery. Moreover, discovery answered this particular question in the

11

negative.[2]  While Plaintiffs argue that the Sullivan Declaration

proves that "Four Seasons received a pleading from which it did,

in fact, ascertain that the amount in controversy exceed $5

million," [Reply at 2,] Plaintiffs do not identify that pleading,

nor do they dispute that they were not seeking millions of

dollars in new facilities.

Plaintiffs' argue further that "Four Seasons chose in

the middle of marketing its bond offering to amend its risk

disclosure to investors to warn them that this suit could impact

their ability to repay their $300 [million] bond wholly

undermines Four Season's [sic] representation to this Court that

it only realized posed [sic] a risk in excess of $5 million

dollars last month."  [Mem. in Supp. of Motion at 16.]  "[I]f

this Class potentially places $300 million in potential

---

[2] Defendants argue that the Sullivan Declaration could not
serve as the basis for removal because they could not prove that
Plaintiffs were actually seeking such construction by a
preponderance of the evidence.  [Mem. in Opp. at 10 n.2.]  It is
true that "[w]hether damages are unstated in a complaint, or, in
defendant's view are understated, the defendant seeking removal
bears the burden to show by a preponderance of the evidence that
the aggregate amount in controversy exceeds $5 million when
federal jurisdiction is challenged."  Ibarra v. Manheim Invs.,
Inc., 775 F.3d 1193, 1197 (9th Cir. 2015) (citation omitted).  It
is also true that "a defendant cannot establish removal
jurisdiction by mere speculation and conjecture, with
unreasonable assumptions."  Id.  The Court therefore concludes
that it would not have been reasonable for Defendants to attempt
to remove this case based solely on a question they had about the
relief sought by Plaintiffs, which turned out to be unwarranted.
This, again, is the exact type of guesswork the Ninth Circuit
said is not required, and would likely be insufficient to support
removal.

investments at risk then the amount in controversy is no doubt met under CAFA." [Id. at 16.]

Plaintiffs overstate the record. In TSC Industries v. Northway, Inc., the United States Supreme Court held that, with regard to the Security and Exchange Commission's proxy rules, "[a]n omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." 426 U.S. 438, 449 (1976). In the document that Plaintiffs reference, Defendants explain:

> The Borrower believes it has meritorious defenses to the Plaintiff's claims against the Borrower and that this pending litigation will not have a material adverse effect on the financial condition of the Borrower or the operation of the Property. However, neither we nor the Borrower can assure you that the lawsuit will not be determined adversely to the Borrower or that any outcome will not have a material adverse effect on the ability of the Borrower to make its debt service payments on the Mortgage Loan or on the value of the Property, and, in turn, a material adverse effect on the Certificates.

[Revere Decl., Exh. 5 ("Offering Circular") at 2.] The Offering Circular offers no estimate of possible liability – it simply states the nature of the suit and that it could possibly have an effect on Defendants' financial future. In addition, the Offering Circular expresses that Defendants believe that they will be able to successfully defend the suit. These documents did not give Defendants enough information to remove and did not trigger the thirty-day removal period. Therefore, these

arguments, too, must be rejected.

## IV.  **Miscellaneous Documents**

Finally, Plaintiffs cite to a series of documents that they say clearly alerted Defendants to the fact that the amount in controversy in the instant matter is over $5 million.  First, Plaintiffs cite to a declaration submitted by Hualalai homeowner Carol Meyer ("Meyer"), expressing that she has received $500,000 in rental income over the past two years, but that she had no bookings for 2016 because of unaccompanied guest fees imposed by Defendants.  [Revere Decl., Exh. 9 (Decl. of Carol Meyer ("Meyer Decl.")) at ¶¶ 6-7.]  Plaintiffs also state that Defendants admitted that around one hundred homeowners at Hualalai rent their homes.  [Revere Decl., Exh. 10 (Trans. of 10/5/16 Depo. of Robert Kildow) at 64.]  Thus, according to Plaintiffs, simple multiplication greatly exceeds CAFA's jurisdictional requirement.

The Ninth Circuit has held that part of the "reasonable amount of intelligence" a defendant must apply in determining removability includes "[m]ultiplying figures clearly stated in a complaint."  Kuxhausen, 707 F.3d at 1140 (internal quotation marks and some citations omitted) (citing Carvalho, 629 F.3d at 884).  Plaintiffs cite numbers that are not in the Amended Complaint.  Moreover, the homeowner's lost rental income is speculative at best, because the Meyer Declaration was signed in November 2015.  Most importantly, Plaintiffs provide no reason

14

why, even if they did provide information to prove Meyer's loss in rental income, it would apply to all Plaintiffs who rent their homes at Hualalai.  See, e.g., Carvalho, 629 F.3d at 886 ("Nothing in the [Meyer Declaration] indicates . . . the amount demanded by each putative class member . . . ." (emphasis omitted)).  This is not a matter of applying reasonable intelligence or multiplying clearly stated figures, but instead Plaintiffs argue that Defendants should have engaged in the very extrapolations and guesswork Kuxhausen says is not required.

Second, Plaintiffs cite an October 20, 2015 email from Zyda to other Hualalai homeowners ("10/20/15 Email") that they assert includes a damage calculation of $451 million.  [Revere Decl., Exh. 11 (email chain between Hualalai homeowners) at 2-3 (10/20/15 Email).]  The plain language of the 10/20/15 Email reveals that it is not based on actual damages.  See, e.g., 10/20/15 Email at 2 (providing an example of how damages may be calculated, including language such as "let's say" and "[i]f all homeowners lost exactly the same amount of theoretical rental income.").  There is nothing in the 10/20/15 Email that indicates that these numbers are based on any one Plaintiff's alleged losses, or even that this is the damages calculation that Plaintiffs intended to use.[3]

---

[3] In fact, the 10/20/15 Email also explains that damages could be calculated using "market comps of sales," but does not
(continued...)

Third, Plaintiffs cite a list of documents that they

assert alerted Defendants to the amount in controversy.[4]  Even

assuming that all of these documents are "other paper" for

---

[3](...continued)
provide additional numbers or calculations – only that homes in
another residential community sell for less than at Hualalai.
[10/20/15 Email at 2-3.]

    [4] First, Plaintiffs cite an email regarding possible United
States Securities and Exchange Commission ("SEC") violations,
dated October 5, 2015 ("10/5/15 Email").  [Revere Decl, Exh. 14
(10/5/15 Email).]  The 10/5/15 Email, authored by Zyda, expresses
his belief that Defendants will need to include the "appropriate
risk factor language" in their bond offering.  [10/5/15 Email at
1.]  Second, Plaintiffs cite an email regarding a survey
conducted by the Members Advisory Board, which states "[a]lthough
approximately 36% of the build properties offer their homes as
vacation rentals, that is not stated as the motivating factor for
their purchase at Hualalai."  [Id., Exh. 15 at 7.]  Third,
Plaintiffs cite a document that they state shows that Zyda lost
$214,000 in rental income during six months of 2015.  [Id., Exh.
16.]  Fourth, Plaintiffs include an email from Zyda's husband,
Michael Wieland ("Wieland"), dated October 10, 2015 ("10/10/15
Email"), where he estimates the possible loss in the value of
their home based on lost rental income, and concludes "based on
the size of our home, our value **would** decrease by $1,273,000 to
$1,908,000.  Multiply that by the number of single family homes
in Hualalai, and that is a staggering loss."  [Id., Exh. 17 at
1.]  Finally, Plaintiffs cite a report by the Resort Access
Committee, written in May 2016, that states "[r]eduction in
rental income" due to changes at Hualalai "has caused significant
reduction in property values."  [Id., Exh. 18 at 16.]  No
document cited by Plaintiffs states the amount in controversy in
the instant matter, nor do any of the documents contain numbers
or allegations that, through "a reasonable amount of
intelligence," Defendants could ascertain removability.
See Kuxhausen, 707 F.3d at 1140 (citation and internal quotation
marks omitted).  Moreover, it is clear to the Court that
Plaintiffs have misrepresented the contents of the 10/10/15 Email
as evidence of the lost value of Zyda's home, when the clear
language of the email states that the numbers are based on
conjecture and rudimentary research.

purposes of § 1446(b),[5] they do not, without guesswork,

conjecture, and extrapolation, affirmatively reveal the amount in

controversy.[6]

Finally, Plaintiffs cite the deposition of Florian

Riedel ("Riedel"), the Four Seasons' Resort Manager, as evidence

that Defendants knew the amount in controversy was more than

$5 million.  [Mem. in Supp. of Motion at 22.]  At his deposition,

Plaintiffs' attorney asked Riedel about an email from a single

Hualalai homeowner, Lisa Morgan ("Morgan"), who alleged that her

---

[5] 28 U.S.C. § 1146(c)(3)(A) ("If the case stated by the
initial pleading is not removable solely because the amount in
controversy does not exceed the amount specified in section
1332(a), information relating to the amount in controversy in the
record of the State proceeding, or in responses to discovery,
shall be treated as an 'other paper' under subsection (b)(3).").

[6] In their reply, Plaintiffs argue, for the first time, that
the motion for class certification explains that Plaintiffs'
claim for unfair or deceptive acts or practices, pursuant to Haw.
Rev. Stat. § 480-2, involves a Hualalai Club membership fee of
$41,000.  [Reply at 7-8; Reply, Decl. of Terrance M. Revere, Exh.
1 (motion for class certification ("Certification Motion")).]
Plaintiffs argue that, because the proposed class was
approximately 316 members, simple multiplication would lead
Defendants to a damages amount greater than $5 million.
Plaintiffs' attorneys are not new to this district court.
Pursuant to Local Rule 7.4, "[a]ny argument raised for the first
time in the reply shall be disregarded."  Accordingly, the Court
may not consider this argument.  The Court notes, however, that
even if it were to do so, the Certification Motion does not
clearly state how the club membership fees relate to or factor
into the damages Plaintiffs are seeking from Defendants.  See,
e.g., Certification Motion at ¶ 11 ("this anti-competitive
practice directly impacted Zyda and other owners' ability to use
and rent their homes at Hualalai Resort and place them at a
competitive disadvantage to Hualalai Resorts' Four Seasons hotel,
which is a competitor for vacation renters at Hualalai Resort."
(footnote omitted)).

home has lost $4 million in value.  [Revere Decl., Exh. 19

(Trans. of 7/29/16 Depo. of Riedel ("Riedel Depo.") at 140-42);

id., Exh. 20 (email from Morgan to Wieland, dated 10/9/15).]  In

addition, Plaintiffs cite Riedel's testimony that Defendants

priced access to the resort facilities higher during peak rental

season to "discourage[] access to the resort facilities."

[Riedel Depo. at 43-44.]  These documents do not provide

Defendants with enough information to ascertain the amount in

controversy, and they did not trigger the thirty-day deadline for

the notice of removal.  Accordingly, Plaintiffs' arguments must

be rejected.

**V.**     **Other Arguments**

Defendants submit that:

It was Plaintiff's unhelpful Damages Interrogatory
Responses that led defense counsel to consider the
effect any potential withdrawal of injunctive
relief may have on the class's loss of market
value damages and to conclude that there now was
sufficient information to invoke CAFA removal,
even though technically the thirty-day removal
clock had not begun to run.

[Mem. in Opp. at 19.]  The Ninth Circuit has stated:

A defendant should not be able to ignore pleadings
or other documents from which removability may be
ascertained and seek removal only when it becomes
strategically advantageous for it to do so.  But
neither should a plaintiff be able to prevent or
delay removal by failing to reveal information
showing removability and then objecting to removal
when the defendant has discovered that information
on its own.

Roth, 720 F.3d at 1125.[7]  Plaintiffs allege that "Four Seasons

. . . engages in the very gamesmanship the Ninth Circuit is

concerned about," [Mem. in Supp. of Motion at 24 (citation

omitted),] but they misstate Ninth Circuit precedent:

> We discern one practical objection to our
> reading of §§ 1441 and 1446(b).  It may be that in
> some diversity cases, defendants will be able to
> take advantage of the fact that neither the
> "initial pleading" nor any later document received
> from plaintiff triggers one of the two thirty-day
> periods.  In such cases, defendants may sometimes
> be able to delay filing a notice of removal until
> it is strategically advantageous to do so.  In a
> non-CAFA diversity case, the advantage gained
> through such gamesmanship is limited by the fact
> that a notice of removal must be filed, in any
> event, within one year of the commencement of the
> action.  See 28 U.S.C. § 1446(c)(1).  However, in
> a CAFA case, there is no such time limit.  A CAFA
> case may be removed at any time, provided that
> neither of the two thirty-day periods under
> § 1446(b)(1) and (b)(3) has been triggered.  See
> 28 U.S.C. 1453(b).
>
> It is thus at least theoretically possible in
> a CAFA case for a defendant to wait until the
> state court has shown itself ill-disposed to
> defendant, or until the eve of trial in state
> court, before filing a notice of removal. . . .
>
> Our best answer – and a likely sufficient
> answer – is that plaintiffs are in a position to
> protect themselves.  If plaintiffs think that

---

[7] It is worth noting that Plaintiffs cite this passage from Roth, see Mem. in Supp. of Motion at 23, but leave out the Ninth Circuit's admonition that "a plaintiff [should not] be able to prevent or delay removal by failing to reveal information showing removability and then objecting to removal when the defendant has discovered that information on its own." Roth, 720 F.3d at 1126. The Court finds this curious, given the direct applicability of the Ninth Circuit's warning in the instant matter.

19

> their action may be removable and think, further,
> that the defendant might delay filing a notice of
> removal until a strategically advantageous moment,
> they need only provide to the defendant a document
> from which removability may be ascertained. 28
> U.S.C. § 1446(b)(3). Such a document will trigger
> the thirty-day removal period, during which
> defendant must either file a notice of removal or
> lose the right to remove.

Roth, 720 F.3d at 1126; see also 5-23 Moore's Federal Practice –
Civil § 23.63A (2017) ("Thus, under appropriate circumstances, a
defendant may remove at any time, even several years after
commencement of the action, provided the notice of removal is
filed within 30 days after receipt of a pleading or other paper
from which the defendant first may ascertain that the action is
or has become removable. If no such pleading or paper is filed
by the plaintiff, then the 30-day period is not triggered, and
there is no time limit on removal."). Further, Plaintiffs argue
that "[r]emoval . . . is construed restrictively," [Mem. in Supp.
of Motion at 5,] but this, too, is incorrect: "no antiremoval
presumption attends cases invoking CAFA, which Congress enacted
to facilitate adjudication of certain class actions in federal
court."[8] Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S.
Ct. 547, 554 (2014) (citations omitted); see also, Jordan, 781

---

[8] Plaintiffs argue that the correct standard "is whether
Four Seasons had access to information from which it could
ascertain an amount in controversy over $5 million." [Mem. in
Supp. of Motion at 26 (emphasis and footnote omitted).] While
this is not incorrect, it is incomplete, as Plaintiffs fail to
acknowledge the limits on what a defendant is required to do in
ascertaining an amount in controversy. See supra Section IV.

F.3d at 1183 ("Even though <u>Dart Cherokee</u> focused primarily on how specifically the 'amount in controversy' requirement must be asserted in a defendant's removal notice under CAFA, the Supreme Court left no doubt 'that not antiremoval presumption attends cases involving CAFA.'" (citing <u>Dart Cherokee</u>, 135 S. Ct. at 554.)).[9]

The Notice of Removal states that "Plaintiff has not yet provided Defendants with objective and unambiguous information concerning the potential amount in controversy." [Notice of Removal at ¶ 25.]  It is clear from the record that, on October 25, 2016, and in response to an interrogatory about whether or not Plaintiffs were seeking "damages based on a reasonable lost profits theory," the amount of damages, and the evidentiary support for those damages, Plaintiffs replied: "Plaintiffs damages will be calculated according to the applicable rules and authority and disclosed to pursuant [sic] to applicable Court Rules and this Court's August 26, 2016 Order Setting Jury Trial Date and Pretrial Deadlines."  [Meheula Decl., Exh. 5 (Plaintiffs' response to Defendants second request for answers to interrogatories) at 7.]  Thereafter, "Defendants

---

[9] Related to their opposition to removal, Plaintiffs present a comity argument based upon what they apparently believe is a possibility that this Court may act as "a de facto Appellate court and reverse certification."  [Mem. in Supp. of Motion at 30.]  Any challenge to class certification is not presently before this Court and will not be considered.

deduced that Plaintiffs may seek to, by supplemental pleading or otherwise, attempt to recover speculative future property value losses based on the 2016 [daily resort guest fee] policy and subsequent policies adopted in subsequent years and that such amounts could exceed $5 million and thus promptly sought removal." [Mem. in Opp., Decl. of William Meheula at ¶ 15.] Plaintiffs argue that it is "unfair for Four Seasons to ask this Court to now interfere with the Third Circuit's docket when it has refused to remove this case for months." [Id. at 31.] To the contrary, Plaintiffs had ample opportunity to provide Defendants with information that would reveal the amount in controversy and therefore trigger the deadline for removal. Neither Plaintiffs' pleadings nor any other document cited in the Motion, considered individually or collectively, provided Defendants with enough information to ascertain the amount in controversy here.[10] The Motion is therefore DENIED.[11]

---

[10] Plaintiffs make much of what they insinuate are Defendants' disingenuous litigation tactics. For example, Plaintiffs state that "Class Plaintiffs' believe this removal is brought not because it has any chance of success, but simply because Michael Dell and S. Robson Walton have litigation money to burn and wish to derail the State Court's June 2017 trial date. Such conduct should not be tolerated." [Mem. in Supp of Motion at 4.] Plaintiffs do not provide any evidence to support this claim, and the Court has found otherwise.

[11] Accordingly, Plaintiffs' request for fees and costs is also denied. See Mem. in Supp. of Motion at 31-33.

**CONCLUSION**

On the basis of the foregoing, Plaintiff Christopher Zyda's, on behalf of himself and all others similarly situated, Motion for Remand, filed November 14, 2016, is HEREBY DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, March 28, 2017.



    /s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

CHRISTOPHER ZYDA, ETC., ET AL. VS. FOUR SEASONS HOTELS AND RESORTS FOUR SEASONS, INC., ET AL; CIVIL 16-00591 LEK-KSC; ORDER DENYING PLAINTIFFS' MOTION FOR REMAND