IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

CHRISTOPHER ZYDA, On Behalf ) CIVIL 16-00591 LEK
of Himself and All Others )
Similarly Situated, )
)
            Plaintiffs, )
)
    vs. )
)
FOUR SEASONS HOTELS AND )
RESORTS FOUR SEASONS HOLDINGS )
INC.; FOUR SEASONS HUALALAI )
RESORT; HUALALAI RESIDENTIAL, )
LLC (dba HUALALAI REALTY); )
HUALALAI INVESTORS, LLC; )
KAUPULEHU MAKAI VENTURE; )
HUALALAI DEVELOPMENT COMPANY; )
HUALALAI VILLAS & HOMES; )
HUALALAI INVESTORS, LLC; )
HUALALAI RENTAL MANAGEMENT, )
LLC; and DOES 1-100, )
)
            Defendants. )
_____ )

**ORDER DENYING DEFENDANTS' MOTION TO DECERTIFY CLASS ACTION**

On August 15, 2017, Defendants Four Seasons Hotels

Ltd., Four Seasons Holdings, Inc. (collectively "Four Seasons

Defendants"), Hualalai Investors, LLC, Hualalai Residential LLC,

and Hualalai Rental Management, LLC's (collectively "Hualalai

Defendants" and all collectively "Defendants") filed their Motion

to Decertify Class Action ("Motion"). [Dkt. no. 66.] On

August 22, 2017, Intervenors James R. Mahoney, Ann Marie Mahoney,

Judith Runstad, H. Jon Runstad, Jonathan Seybold,

Patricia Seybold, David Keyes, Doreen Keyes, Julie Wrigley,

Kevin Reedy, Lynn Reedy, Bradley Chipps, Donna Chipps, and

J. Orin Edson ("Intervenors") filed a substantive joinder in the Motion ("Joinder"). [Dkt. no. 71.] Plaintiff Christopher Zyda, on behalf of himself and all others similarly situated ("Zyda" and collectively the "Class"), filed their memorandum in opposition on September 27, 2017, and Intervenors and Defendants filed their respective reply memoranda on October 10, 2017. [Dkt. nos. 74, 75, 76.] The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.2(d) of the Local Rules of Practice of the United States District Court for the District of Hawai`i ("Local Rules"). Defendants' Motion is hereby denied for the reasons set forth below.

## BACKGROUND

On October 2, 2015, Zyda filed his "Class Action Complaint for Damages Declaratory and Injunctive Relief" ("Complaint") in the Circuit Court of the Third Circuit, State of Hawai`i ("state court"). [Notice of Removal of Action Pursuant to 28 U.S.C. § 1332(d) and 28 U.S.C. § 1453(b), filed 11/1/16 (dkt. no. 1) ("Notice of Removal"), Decl. of William Meheula ("Meheula Removal Decl."), Exh. 1 (Complaint).] On October 14, 2015, Zyda filed his "First Amended Class Action Complaint for Damages Declaratory and Injunctive Relief" ("Amended Complaint"). [Id., Exh. 2 (Amended Complaint).]

## I.   <u>Allegations in the Amended Complaint</u>

Zyda is the owner of real property within the Hualalai Resort community ("Hualalai"), which is located on the Island of Hawai`i.  The Hualalai Defendants are owners, developers, and realtors for Hualalai.  Zyda alleges the Hualalai Defendants control both the Hualalai Resort ("Resort") and the Hualalai Club ("Club").[1]  The Hualalai Defendants retained the Four Seasons Defendants to manage the Resort, the Club, and the hotel at the Resort.  [Amended Complaint at ¶¶ 4-6.]  Zyda alleges Defendants induced him and others to purchase homes within Hualalai, as well as Club memberships, by promising that their family members and guests would be able to enjoy the Club and Resort facilities "without additional guest fees."  [<u>Id.</u> at ¶ 10.]  Zyda alleges that, after he and other members of the proposed class had committed substantial resources, "Defendants failed to maintain and provide adequate facilities to handle the growing population."  [<u>Id.</u> at ¶ 11.]  Zyda alleges Defendants continued to build homes in Hualalai and sell new Club memberships to non-Hualalai residents, while falsely complaining that Hualalai

---

[1] The Resort hotel is the Four Seasons Hualalai.  The Resort amenities are integrated with the hotel and include beach facilities, four swimming pools, and restaurants.  The Club amenities are distinct from the Resort, and include a golf course, gym, clubhouse, and canoe club.  [Motion, Decl. of William Meheula ("Meheula Motion Decl."), Exh. R. (Decl. of Patrick Fitzgerald ("Fitzgerald Decl.")) at ¶ 25.]  Patrick Fitzgerald is the president and chief executive officer of the Resort.  [<u>Id.</u> at ¶ 1.]

homeowners' guests overburden the Resort. Without proper cause, Defendants discouraged members of the proposed class from using their Club memberships by significantly increasing fees and charges for unaccompanied guests.[2] [Id. at ¶¶ 12-13.] Zyda alleges the 2016 DRGFs violated representations Defendants made to induce sales; and were imposed to favor Defendants' own interests regardless of the harm the 2016 DRGFs caused to Class members' property values and use and enjoyment of the Club and Resort. [Id. at ¶ 13.] Zyda alleges Defendants continue to operate the Club and Resort "in secrecy, and fail and refuse to act openly and in good faith" with regard to the Class's rights. [Id. at ¶ 14.]

Zyda brings state law claims for: violation of the Condominium Property Act, Haw. Rev. Stat. Chapter 514B ("Count I"); [id. at ¶¶ 24-29;] violation of the Uniform Land Sales Practices Act, Haw. Rev. Stat. Chapter 484 (Count II"); [id. at ¶¶ 30-36;] unfair methods of competition ("UMOC") and unfair or deceptive acts or practices ("UDAP"), in violation of Haw. Rev. Stat. § 480-2 ("Count III"); [id. at ¶¶ 37-40;] promissory estoppel/detrimental reliance ("Count IV"); [id. at ¶¶ 41-44;] violation of the duty of good faith and fair dealing

---

[2] The fees, called Daily Resort Guest Fees ("DRGFs"), were initially imposed in 2007 at a rate of $30 per person per day. [Fitzgerald Decl. at ¶ 36.] The fee schedule effective in 2016 ("the 2016 DRGFs") charged up to $250 per person per day. [Id. at ¶ 53.]

("Count V"); [id. at ¶¶ 45-47;] negligent misrepresentation

("Count VI"); [id. at ¶¶ 48-54;] estoppel ("Count VII"); [id. at

¶¶ 55-58;] unjust enrichment ("Count VIII"); [id. at ¶¶ 59-61;]

organized crime, pursuant to Haw. Rev. Stat. Chapter 842

("Count IX"); [id. at ¶¶ 62-65;] and breach of fiduciary and

other common law duties ("Count X"), [id. at ¶¶ 66-68].

Zyda seeks: general, special, treble, and

consequential damages; attorneys' fees; punitive damages;

injunctive and declaratory relief; a court order requiring

various reforms to Club policies; and any other appropriate

relief. [Id., Prayer for Relief ¶¶ 1-15.]

## II. **Certification Order**

On October 13, 2016, the state court issued its Order

Granting Plaintiff's Motion for Class Certification, Filed

April 26, 2016 ("Certification Order"). [Meheula Removal Decl.,

Exh. 3.] The Certification Order defined the Class as:

> All purchasers of residential properties in the
> Hualalai Resort from 1995 to the present who are
> members of the Hualalai Club and whose properties
> are subject to a guest fee or other restriction on
> the use of Hualalai Resort amenities for any
> family member or guest (including rental guest) of
> such owner.

[Id. at 2.] The law firms of Lynch Hopper Smith, LLP and Revere

& Associates LLC were appointed as Class Counsel. [Id.]

## III. **Removal**

On November 1, 2016, before any class notice was approved, Defendants removed the case pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(A). [Notice of Removal at ¶¶ 16-20.] On March 28, 2017, the Court issued its Order Denying Plaintiffs' Motion for Remand ("3/28/17 Order"). [Dkt. no. 36.[3]]

## IV. **Motion**

In the instant Motion, Defendants argue the state court's Certification Order does not survive removal. Alternatively, Defendants move to decertify the Class under Fed. R. Civ. P. 23. The Class argues all the Rule 23(a) and 23(b)(3) requirements are satisfied.

Intervenors are eight Class members who support the 2016 DRGFs and argue they have a fundamental conflict with Zyda.[4] Intervenors join Defendants in seeking decertification.

### STANDARD

"Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied." Parsons v. Ryan, 754 F.3d 657, 674 (9th Cir. 2014) (some citations and internal quotation marks omitted)

---

[3] The 3/28/17 Order is available on Westlaw at 2017 WL 1157844.

[4] On August 4, 2017, the magistrate judge issued the Order Granting Amended Motion to Intervene. [Dkt. no. 65.]

6

(quoting <u>Wal–Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 351, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011)).  The party seeking to maintain class certification must "satisfy through evidentiary proof [the Rule 23(a) requirements and] at least one of the provisions of Rule 23(b)."  <u>Comcast Corp. v. Behrend</u>, 569 U.S. 27, 33 (2013).  Rule 23 states, in pertinent part:

> (a)  Prerequisites.  One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> > (1)  the class is so numerous that joinder of all members is impracticable;
> >
> > (2)  there are questions of law or fact common to the class;
> >
> > (3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> >
> > (4)  the representative parties will fairly and adequately protect the interests of the class.
>
> (b)  Types of Class Actions.  A class action may be maintained if Rule 23(a) is satisfied and if:
>
> > . . . .
> >
> > (3)  the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

The Rule 23(a) requirements are known as:
"(1) numerosity; (2) commonality; (3) typicality; and
(4) adequacy of representation." <u>Parsons</u>, 754 F.3d at 674
(footnote omitted).  The Rule 23(b)(3) requirements are known as
the "predominance and superiority requirements." <u>Baker v. Castle
& Cooke Homes Hawaii, Inc.</u>, Civil No. 11-00616 SOM-RLP, 2014 WL
1669158, at *3 (D. Hawai`i Apr. 28, 2014).

The Ninth Circuit has stated:

> In evaluating whether a party has met the
> requirements of Rule 23, we recognize that
> "Rule 23 does not set forth a mere pleading
> standard." <u>Wal-Mart</u>, 131 S. Ct. at 2551.  We
> therefore require a party seeking class
> certification to "affirmatively demonstrate
> his compliance with the Rule — that is, he
> must be prepared to prove that there are in
> fact sufficiently numerous parties, common
> questions of law or fact, etc." <u>Id.</u>
> Similarly a party must affirmatively prove
> that he complies with one of the three
> subsections of Rule 23(b).

<u>Parsons</u>, 754 F.3d at 654.

## DISCUSSION

## I.  The Class Continues to Exist After Removal

Defendants first argue the state court Certification
Order does not remain in place following removal.  The Ninth
Circuit has stated:

> "After removal, the federal court takes the case
> up where the State court left it off." <u>Granny
> Goose Foods, Inc. v. Teamsters</u>, 415 U.S. 423, 436,
> 94 S. Ct. 1113, 39 L. Ed. 2d 435 (1974) (internal
> quotation marks omitted).  "The federal
> court . . . treats everything that occurred in the

state court as if it had taken place in federal
court." Butner v. Neustadter, 324 F.2d 783, 785
(9th Cir. 1963). Consequently, an order entered
by a state court "should be treated as though it
had been validly rendered in the federal
proceeding." Id. at 786. "[F]ederal rather than
state law governs the future course of
proceedings." Granny Goose Foods, 415 U.S. at
437, 94 S. Ct. 1113.

Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 887 (9th

Cir. 2010) (alterations in Carvalho). After removal, the state

court's Certification Order remains in effect, and the Class

retains its legal status separate from Zyda. See Pitts v.

Terrible Herbst, Inc., 653 F.3d 1081, 1090 (9th Cir. 2011)

("[U]pon certification the class acquires a legal status separate

from the interest asserted by the class representative."

(internal quotation marks and alterations omitted)).

Defendants argue class certification requirements are

less demanding in state court. Even if that is true, Defendants

are sufficiently protected because a Rule 23 decertification

motion may be brought at any time. See Lambert v. Nutraceutical

Corp., 870 F.3d 1170, 1182 (9th Cir. 2017) ("The party seeking to

maintain class certification bears the burden of demonstrating

that the Rule 23 requirements are satisfied, even on a motion to

decertify."). The instant Motion also seeks decertification

under Rule 23. The Court therefore examines the Rule 23

requirements in turn.

## II. **Rule 23(a) Prerequisites**

### A. **Numerosity**

This Court has described the Rule 23(a) numerosity inquiry as follows:

> The numerosity inquiry "requires examination of the specific facts of each case and imposes no absolute limitations." <u>Gen. Tel. Co. of the Nw., Inc. v. E.E.O.C.</u>, 446 U.S. 318, 330, 100 S. Ct. 1698, 64 L. Ed. 2d 319 (1980). Courts, however, have found the numerosity requirement to be satisfied when a class includes at least 40 members. <u>See</u> <u>Consol. Rail Corp. v. Town of Hyde Park</u>, 47 F.3d 473, 483 (2d Cir. 1995) (noting that "numerosity is presumed at a level of 40 members") (citation omitted); <u>In re Nat'l W. Life Ins. Deferred Annuities Litig.</u>, 268 F.R.D. 652, 660 (S.D. Cal. 2010) (noting that "[c]ourts have found joinder impracticable in cases involving as few as forty class members") (citations omitted); <u>E.E.O.C. v. Kovacevich "5" Farms</u>, No. CV-F-06-165 OWW/TAG, 2007 WL 1174444, at *21 (E.D. Cal. Apr. 19, 2007) (noting that "[c]ourts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members"); <u>Ikonen v. Hartz Mountain Corp.</u>, 122 F.R.D. 258, 262 (S.D. Cal. 1988) (noting that "[a]s a general rule, classes of 20 are too small, classes of 20-40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough").

<u>Davis v. Abercrombie</u>, Civil No. 11-00144 LEK-BMK, 2014 WL 4956454, at *6 (D. Hawai`i Sept. 30, 2014) (alterations in <u>Davis</u>) (citation omitted). According to Defendants, there were 320 Club members in June 2016. [Motion, Decl. of Florian Riedel ("Riedel Decl.") at ¶ 12.[5]] The Class is "so numerous that joinder of all

---

[5] Florian Riedel is the Vice President of Operations at the
(continued...)

members is impracticable."  See Rule (23)(a)(1).

**B.    Commonality**

**1.    Identification of Common Questions**

Commonality depends on the "capacity of a classwide
proceeding to generate common answers apt to drive the resolution
of the litigation."  Wal-Mart, 564 U.S. at 350 (internal
quotation marks and citation omitted).  The Ninth Circuit has
explained that the commonality analysis "does not turn on the
number of common questions, but on their relevance to the factual
and legal issues at the core of the purported class' claims."
Jimenez v. Allstate Ins. Co., 765 F.3d 1161, 1165 (9th Cir. 2014)
(citations omitted).

> Plaintiffs need not show, however, that
> "every question in the case, or even a
> preponderance of questions, is capable of class
> wide resolution.  So long as there is 'even a
> single common question,' a would-be class can
> satisfy the commonality requirement of Rule
> 23(a)(2)."  Wang [v. Chinese Daily News, Inc.],
> 737 F.3d [538,] 544 [(9th Cir. 2013)] (quoting
> Wal-Mart, 131 S. Ct. at 2556); see also Mazza v.
> Am. Honda Motor Co., Inc., 666 F.3d 581, 589 (9th
> Cir. 2012) (noting that "commonality only requires
> a single significant question of law or fact").
> Thus, "[w]here the circumstances of each
> particular class member vary but retain a common
> core of factual or legal issues with the rest of
> the class, commonality exists."  Evon v. Law
> Offices of Sidney Mickell, 688 F.3d 1015, 1029
> (9th Cir. 2012) (quotation marks and citation
> omitted).

---

[5](...continued)
Four Seasons Resort Hualalai.  [Riedel Decl. at ¶ 1.]

11

<u>Parsons</u>, 754 F.3d at 675 (some alterations in <u>Parsons</u>) (footnotes omitted).

"Whether a question will drive the resolution of the litigation necessarily depends on the nature of the underlying legal claims that the class members have raised." <u>Jimenez</u>, 765 F.3d at 1165. "[T]o assess whether the putative class members share a common question, the answer to which will resolve an issue that is central to the validity of each one of the [class members's] claims, we must identify the elements of the class members's case-in-chief." <u>Parsons</u>, 754 F.3d at 676 (internal quotation marks and citations omitted) (some alterations in <u>Parsons</u>).

The Class alleges the 2016 DRGFs violate § 480-2 on both UMOC and UDAP theories. The Class's UMOC theory is that the 2016 DRGFs unfairly make Class members' vacation rental offerings comparatively less desirable because Defendants' hotel guests are not charged DRGFs to access the Resort. "[C]ompetitive conduct is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." <u>Roberts Hawaii Sch. Bus, Inc. v. Laupahoehoe Transp. Co.</u>, 91 Hawai`i 224, 255, 982 P.2d 853, 884 (1999).[6] "It is impossible to frame definitions which

---

[6] <u>Roberts Hawaii</u> was superseded by statute on other grounds as recognized in <u>Hawaii Medical Ass'n v. Hawaii Medical Service</u>
(continued...)

12

embrace all unfair practices.  There is no limit to human inventiveness in this field. . . .  Whether competition is unfair or not generally depends upon the surrounding circumstances of the particular case."  <u>Cieri v. Leticia Query Realty, Inc.</u>, 80 Hawai`i 61, 67, 905 P.2d 29, 36 (1995).

In support of their UMOC theory, the Class points to statements Defendants made in 2014 before the Four Seasons Defendants took over management of the Club.  Defendants stated that "Four Seasons [will] avoid the potential conflict of interest" arising from managing facilities for both hotel guests and Club members, and the Club's contractual "agreement with Four Seasons [] ensure[s] no potential conflict would ever happen." [Mem. in Opp., Decl. of Class Counsel P. Kyle Smith ("Smith Decl."), Exh. 4 (Hualalai FAQ) at 2.]  The Hualalai FAQ also stated "no access changes for unaccompanied guests or rental guests [are] part of this merger," but promised that advance notice would be provided if changes were later necessary to meet the expectations of Club members and hotel guests.  [<u>Id.</u> at 4.] Defendants' August 2015 announcement of the 2016 DRGFs explained the fees would increase because of the "the growing rental population" and because "our Hotel guests [complained of] pressure on the facilities during peak times."  [Meheula Removal

---

[6](...continued)
<u>Ass'n</u>, 113 Hawai`i 77, 107, 148 P.3d 1179, 1209 (2006).

Decl., Exh. 7 (1 of 5)[7] at 84 (2016 Resort Access FAQ's).[8]]

The Class argues the 2016 DRGFs were a substantial change in policy, which occurred soon after the Four Seasons Defendants assumed management control of the Club, and which constituted unfair competition. Defendants argue contractual agreements allow hotel guests to be prioritized over Class members' guests. [Fitzgerald Decl. at ¶ 57.] Whether the 2016 DRGFs constitute an unfair method of competition is a common question, the answer to which is apt to drive the resolution of this litigation.

Defendants argue commonality does not exist because not all Class members rent their homes. However, "[a]ctions based on unfair methods of competition . . . are not so limited. Instead, HRS § 480-2(e) provides that '[a]ny person may bring an action

---

[7] Exhibit 7 is a "copy of all the process, pleadings, orders, and documents from the State Court Action that Defendants have been served with in accordance with the requirements of 28 U.S.C. § 1446(a)." [Mehuela Removal Decl. at ¶ 9.] On the district court's electronic filing system, Exhibit 7 is divided into five parts, and each part is a single document that is not consecutively paginated. All citations to the documents within Exhibit 7 refer to the page numbers assigned by the electronic filing system.

[8] The 2016 Resort Access FAQ's are attached as Exhibit 9 to the Declaration of Christopher Zyda, which is attached to Plaintiffs' Motion for Partial Summary Judgment on Their Third Claim for Relief (Liability for Unfair Competition Under HRS 480), filed November 19, 2015 in the Circuit Court of the Third Circuit State of Hawai`i ("Zyda Summary Judgment Declaration"). [Meheula Removal Decl., Exh. 7 (1 of 5) at 66-67 (Zyda Summary Judgment Decl.).]

based on unfair methods of competition.'" <u>Davis v. Four Seasons</u>

<u>Hotel Ltd.</u>, 122 Hawai`i 423, 427, 228 P.3d 303, 307 (2010)

(emphasis and footnote omitted); <u>see also</u> <u>Gurrobat v. HTH Corp.</u>,

133 Hawai`i 1, 23, 323 P.3d 792, 814 (2014) (recovery for UMOC

does not require proof of injury "result[ing] from the

[practice's] negative effect on competition"; recovery

permissible for any injury "that flows from the defendant's

conduct that negatively affects competition or harms fair

competition").  Because all Class members were exposed to the

2016 DRGFs, differences between renters and non-renters are not

likely "to impede the generation of common answers."  <u>See</u>

<u>Wal-Mart</u>, 564 U.S. at 350 (internal quotation marks and citation

omitted).

The Class's UDAP theory is that guest access to the

Club and Resort was material to Class members' home purchase

decisions, and the 2016 DRGFs would have been "likely to affect

their choice of, or conduct regarding," purchasing a home in the

Hualalai Resort community.  <u>See</u> <u>Courbat v. Dahana Ranch, Inc.</u>,

111 Hawai`i 254, 262, 141 P.3d 427, 435 (2006).  Under § 480-2,

> a deceptive act or practice is (1) a
> representation, omission, or practice that (2) is
> likely to mislead consumers acting reasonably
> under the circumstances where (3) the
> representation, omission, or practice is material.
> A representation, omission, or practice is
> considered "material" if it involves information
> that is important to consumers and, hence, likely
> to affect their choice of, or conduct regarding, a
> product.  Moreover, the . . . test is an objective

15

one, turning on whether the act or omission is
likely to mislead consumers as to information
important to consumers in making a decision
regarding the product or service.

Id. (brackets, internal citations, quotation marks, and footnotes

omitted).

The Class contends Defendants' marketing to prospective

home purchasers included the possibility of renting, as shown by

evidence including:  a screenshot of the Hualalai Realty website

describing renting as an option for "Owners . . . looking to

offset some of the fixed costs of ownership"; and an email

describing Defendants' service of marketing and managing owners'

homes as vacation rentals, including descriptions of nightly

rates and commissions.  [Meheula Removal Decl., Exh. 7 (1 of 5)

at 68 (email), 72 (website screenshot).[9]]  The Class points to

the residential use restrictions section of Hualalai's Master

Declaration of Protective Covenants, Conditions and Restrictions

and Reservations of Easements for Hualalai, which states:  "this

provision shall not preclude any Owner in any Residential Area

from renting or leasing[.]"  [Smith Decl., Exh. 1 at 2.]

The Class also relies on deposition testimony of Robert

Kildow ("Kildow"), who is the Hualalai Defendants' director of

sales.  [Reply, Decl. of William Meheula ("Meheula Reply Decl."),

---

[9] The email and screenshot are, respectively, Exhibits 1 and
3 to the Zyda Summary Judgment Declaration.  [Meheula Removal
Decl., Exh. 7 (1 of 5) at 66-67.]

16

Exh. T (trans. of 10/5/16 depo. of Robert Kildow ("Kildow Depo.")) at 11.] Specifically, Kildow stated: the ability to rent is important to some purchasers; [id. at 64;] access to the Club and Resort is important to renters, and without access, "it sort of defeats the purpose"; [id. at 74;] if asked about renting, Hualalai real estate sales agents would describe renting as "a realistic way to offset some of [the] fixed costs" of home ownership; [id. at 66;] developers of exclusive communities can get an initial "jump start" on sales by allowing unrestricted rentals, but later on, allowing unrestricted rentals becomes undesirable because it reduces exclusivity; [id. at 202;] the 2016 DRGFs have the effect of discouraging rentals; [id. at 198;] Hualalai's real estate documents do not allow for direct restrictions on rentals; [id.;] and in some seasons, the 2016 DRGFs target renters for higher fees than unaccompanied guests, [id. at 125].

The Class has thus shown through evidentiary proof that there are multiple "common contention[s,] such that determination of [their] truth or falsity will resolve an issue that is central to the validity of [the Class's] claim[s] in one stroke." See Jimenez, 765 F.3d at 1165 (internal quotation marks and citation omitted). Common factual questions include: what representations the Hualalai Defendants made to Class members before they purchased their homes; what representations the Four

17

Seasons Defendants made to Class members before they took over management of the Club; and how the 2016 DRGFs impacted the competitive landscape for rental guests at Hualalai. Common legal questions include whether the 2016 DRGFs constituted either: an unfair method of competition; or a practice that was unfair or deceptive, and material, to Hualalai home purchasers.

### 2. **Oral Misrepresentations Do Not Prevent Commonality**

Some Class members allege oral misrepresentations regarding guest fees before purchasing their homes. For example, Zyda states that, before he purchased his home in March 2000, Defendants represented that his house guests and rental guests "would be able to freely use . . . Hualalai Club's facilities without having to pay additional guest fees." [Mem. in Opp, Decl. of Christopher Zyda ("Zyda Opp. Decl.") at ¶ 15.] But under the 2016 DRGFs, inviting his nephew, wife, and eight friends to Hualalai for Christmas in 2016 would result in fees of $17,500 per week.[10] [Id. at ¶ 22.] A former owner declares that, before he purchased his condo unit in 2005, renting was "a big part" of his purchase decision, and Defendants "were very eager to promote" renting. [Mem. in Opp., Decl. of Jim Ullakko at ¶¶ 3-4.] But after the 2016 DRGFs were imposed, he had to lower his rental rates, and ultimately sold his unit at a

---

[10] Zyda states the $17,500 in DRGFs would be charged above, and in addition to, the $40,624.97 annual Club membership. [Zyda Opp. Decl. at ¶ 22.]

18

substantial loss.  [Id. at ¶¶ 9-11.]

Defendants argue commonality is absent because some Class members deny receiving oral misrepresentations.[11]  However, the Class has affirmatively demonstrated compliance with the commonality requirement based on allegedly deceptive published marketing materials, without consideration of any evidence of oral misrepresentations.  See Mazza, 666 F.3d at 589 (only one "significant question of law or fact" is required); Yokoyama v. Midland Nat'l Life Ins. Co., 594 F.3d 1087, 1093 (9th Cir. 2010) (where the plaintiffs alleged annuity marketing brochures' omissions were deceptive in violation of § 480-2, the district court abused its discretion in denying certification on grounds that the "claims 'involve separate questions of fact as to what information the independent [sales agents] conveyed'").  Because liability under § 480-2 requires an objective "determin[ation] whether [the marketing] materials are 'likely to mislead consumers acting reasonably under the circumstances,'" the fact-finder will not be required to "parse what oral representations each [sales agent] made to each plaintiff."  See Yokoyama, 594 F.3d at 1093 (quoting Courbat, 141 P.3d at 435).

---

[11] Intervenor James R. Mahoney states that, when he purchased in 2006, "no one ever told [him] . . . rental guests would never have to pay an access fee," and that he understood that fees or access restrictions could be imposed on rental guests.  [Joinder, Decl. of James R. Mahoney at ¶ 8.]

Defendants rely on In re LifeUSA Holdings Inc., 242
F.3d 136, 146-47 (3d Cir. 2001), and argue any claim based on
oral misrepresentations is necessarily individualized. However,
the Ninth Circuit "favors class treatment of fraud claims
stemming from a common course of conduct," and explicitly rejects
LifeUSA's requirement that misrepresentations be uniform. In re
First Alliance Mortg. Co., 471 F.3d 977, 990 & n.3 (9th Cir.
2006) (citation and internal quotation marks omitted) (citing
LifeUSA, 242 F.3d at 146-47).

### 3. Merits Defenses Do Not Destroy Commonality

"Rule 23 grants courts no license to engage in
free-ranging merits inquiries at the certification stage." Amgen
Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 466 (2013).

> A common contention need not be one that
> "will be answered, on the merits, in favor of the
> class." Amgen, [568 U.S. at 459,] 133 S. Ct. at
> 1191. It only "must be of such a nature that it
> is capable of classwide **resolution**." Wal-Mart,
> [564 U.S. at 350,] 131 S. Ct. at 2551 (emphasis
> added); see Eisen v. Carlisle & Jacquelin, 417
> U.S. 156, 178, 94 S. Ct. 2140, 40 L. Ed. 2d 732
> (1974) ("In determining the propriety of a class
> action, the question is not whether the plaintiff
> or plaintiffs have stated a cause of action or
> will prevail on the merits, but rather whether the
> requirements of Rule 23 are met.") (quoting Miller
> v. Mackey Int'l, 452 F.2d 424, 427 (5th Cir.
> 1971)). Thus, "whether class members could
> actually prevail on the merits of their claims" is
> not a proper inquiry in determining the
> preliminary question "whether common questions
> exist." Ellis v. Costco Wholesale Corp., 657 F.3d
> 970, 983 n.8 (9th Cir. 2011). "To hold otherwise
> would turn class certification into a mini-trial,"
> id., when the purpose of class certification is

> merely "to select the 'metho[d]' best suited to
> adjudication of the controversy 'fairly and
> efficiently.'" <u>Amgen</u>, 133 S. Ct. at 1191
> (alteration in original).

<u>Alcantar v. Hobart Serv.</u>, 800 F.3d 1047, 1053 (9th Cir. 2015)

(some alterations in <u>Alcantar</u>).

Defendants argue commonality does not exist because
home purchase agreements gave Defendants "plenary power to impose
guest fees." [Mem. in Supp. of Motion at 23.[12]]  The existence
of this class-wide defense does not prevent certification.  To
the contrary, it highlights another common question, the
resolution of which is "apt to drive the resolution of the
litigation."  <u>See</u> <u>Wal-Mart</u>, 564 U.S. at 350 (internal quotation
marks and citation omitted).  Whether home purchase agreements
actually do give Defendants plenary power to impose guest fees is
a merits question inappropriate for a Rule 23 decertification
motion.  <u>See</u> <u>Alcantar</u>, 800 F.3d at 1053.

Defendants make numerous arguments as to the
sufficiency of the Class's claims and evidence, but these should

---

[12] Defendants assert that the "Amenity Rules attached to
Zyda's 2000 purchase agreement made clear that guests 'may be
extended guest privileges' upon payment of 'guest
fees and charges' to be 'established by Management in its sole
discretion.'"  [Mem. in Supp. of Motion at 22 (emphasis omitted)
(quoting Ex. S-7 § 3.3).]  Exhibit S is an excerpt of the
July 28, 2016 deposition of Christopher Zyda, with selected
exhibits received at the deposition.  Exhibit S includes a copy
of Zyda's Purchase and Sale Agreement, but not a copy of the
Amenity Rules.  [Meheula Motion Decl., Exh. S-2 (Purchase and
Sale Agreement).]

be brought in a separate motion to dismiss and/or a separate motion for summary judgment.  See Wright v. Renzenberger, Inc., 656 F. App'x 835, 837 (9th Cir. 2016) (A "district court err[s] in determining merits issues best left for a motion to dismiss or motion for summary judgment.").  The Class has affirmatively demonstrated that "there are questions of law or fact common to the class."  See Rule 23(a)(2).

### C.  **Typicality**

The Ninth Circuit has explained that, under Rule 23(a)(3)'s "permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." Parsons, 754 F.3d at 685.  Further, the United States Supreme Court has noted that:

> [t]he commonality and typicality requirements of Rule 23(a) tend to merge.  Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

Wal-Mart, 564 U.S. at 350 n.5 (citation and internal quotation marks omitted).

Defendants argue Zyda is not typical because he suffers atypically greater harm from:  1) DRGFs assessed only on extended family because of his "specific family structure"; and

22

2) restrictions on renters because he rents often.  [Mem. in Supp. of Motion at 20.[13]]  These arguments misapprehend the typicality requirement.  The inquiry looks to the representative's "claims or defenses," not the quantum of the representative's damages.  <u>See</u> Rule 23(a)(3).  Moreover, Defendants' argument does nothing to suggest Zyda's claims are atypical so that Zyda's pursuit of his own claims will not "fairly and adequately protect[]" the absent Class members.  <u>See</u> <u>Wal-Mart</u>, 564 U.S. at 350 n.5.

Zyda is typical because his claims based on the 2016 DRGFs are "reasonably coextensive with those of [the] absent class members."  <u>See</u> <u>Parsons</u>, 754 F.3d at 685.

D.  **<u>Adequacy</u>**

1.  **<u>Generally</u>**

"Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1020 (9th Cir. 1998).  The certifying trial court must protect "the absent class members' due process right to adequate

_____

[13] Defendants submit no evidence showing what family structure is typical, nor do they explain what is atypical about Zyda's objections to Defendants' definition of "immediate family" and his objections to restrictions and fees placed on unaccompanied guests who are extended family.

representation" so that binding absent class members to an adverse judgment is consistent with constitutional due process guarantees.  See Epstein v. MCA, Inc., 179 F.3d 641, 648 (9th Cir. 1999).[14]

Intervenors contend the 2016 DRGFs are:  1) not unlawful; and 2) beneficial, whether or not they are unlawful. Defendants argue this difference of opinion creates a conflict of interest such that Zyda and Class Counsel are inadequate.  It does not.

Defendants do not argue Zyda and Class Counsel are conflicted from adequately representing absent Class members' claims, such that it would be unfair to bind absent Class members to an adverse judgment.  Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997), provides a useful example of a conflict of interest preventing Rule 23(a)(4) adequacy.  In Amchem, some class members had only been exposed to asbestos, and other class members were already experiencing asbestos-caused illness.  Id. at 625-27.  The already ill group favored "generous immediate payments," but the exposure-only group favored "an ample, inflation-protected fund for the future."  Id. at 626.  This conflict prevented adequate representation of both groups' claims.  Id. at 627.

---

[14] Epstein was reversed on other grounds.  Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367 (1996).

24

Rule 23(a)(4) adequacy is not undermined by Intervenors' preference that an allegedly unlawful practice continue. Nor is adequacy undermined by Intervenors' concern that class certification makes it more likely that Defendants will end the allegedly unlawful practice. Intervenors' assertion that the 2016 DRGFs are not unlawful does not give this Court "license to engage in free-ranging merits inquiries at the certification stage." See Amgen, 568 U.S. at 466.

Defendants next argue Zyda and Class Counsel are inadequate because their announced litigation strategy eschews seeking injunctive relief, and some Class members will value injunctive relief. The Court is not troubled by the possibility that some Class members may prefer a different litigation strategy. They may choose subsequently to opt-out to pursue their claims individually.

Defendants also assert conflicts may arise in allocating any relief between renters and non-renters. However, the Ninth Circuit "does not favor denial of class certification on the basis of speculative conflicts." Cummings v. Connell, 316 F.3d 886, 896 (9th Cir. 2003) (some citations omitted) (citing Soc. Servs. Union, Local 535 v. County of Santa Clara, 609 F.2d 944, 948 (9th Cir. 1979) ("Mere speculation as to conflicts that may develop at the remedy stage is insufficient to support denial of initial class certification.")).

## 2. **Membership in the Class**

To be an adequate Class representative, Zyda must have standing to raise each and every claim he raises on behalf of the Class. See Baker, 2014 WL 1669158, at *10 (citing Hawkins v. Comparet-Cassani, 251 F.3d 1230, 1238 (9th Cir. 2001) ("A named plaintiff cannot represent a class alleging [] claims that the named plaintiff does not have standing to raise." (alteration in Baker))). As to Count I, Defendants argue Zyda lacks standing to raise claims under the Condominium Property Act because he did not buy a condominium. The Class has presented no evidence Zyda has standing to raise claims under the Condominium Property Act. Therefore, as to Count I, Zyda is inadequate under Rule 23(a)(4) and must be dismissed as the Class representative.

Decertification is not appropriate at this time because the "'efficient judicial administration weighs in favor of allowing an opportunity for a new and proper class representative to enter the case and litigate the interests of'" the absent Class members asserting Count I. See id. at *16 (quoting Birmingham Steel Corp. v. Tenn. Valley Auth., 353 F.3d 1331, 1336 (11th Cir. 2003)). The Court will "allow a reasonable period of time for a member of the [C]lass to intervene or to be substituted as the [C]lass representative. If, at the end of that period, no adequate representative has appeared," the Court may decertify the action as to Count I. See Birmingham Steel,

353 F.3d at 1343.

Even though Count I is now without a Class representative, this Court retains subject matter jurisdiction under CAFA because "continued jurisdiction under § 1332(d) does not depend on certification," but rather, whether "a defendant properly removed a putative class action at the get-go." See United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Shell Oil Co., 602 F.3d 1087, 1092 (9th Cir. 2010). An Article III case or controversy remains because there is still a live "controversy . . . 'between a named defendant and a member of the [certified] class.'" See Pitts, 653 F.3d at 1090 (some alterations in Pitts) (quoting Sosna v. Iowa, 419 U.S. 393, 402 (1975)).

Except as to Count I, the Class has affirmatively demonstrated compliance with all of the Rule 23(a) prerequisites.

## III. Rule 23(b)(3) Certification

### A. Predominance, Generally

The predominance inquiry asks whether the common issues "are more prevalent or important than the non-common . . . individual issues." Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1045 (2016) (internal quotation marks and citations omitted).

> An individual question is one where "members of a proposed class will need to present evidence that varies from member to member," while a common question is one where "the same evidence will

27

> suffice for each member to make a prima facie
> showing [or] the issue is susceptible to
> generalized, class-wide proof."

Id. (alteration in Tyson) (quoting 2 W. Rubenstein, Newberg on

Class Actions § 4:50, pp. 196–197 (5th ed. 2012)).

Rule 23(b)(3) "does **not** require a plaintiff seeking

class certification to prove that each element of her claim is

susceptible to classwide proof. What the rule does require is

that common questions predominate over any questions affecting

only individual class members." Amgen, 568 U.S. at 469

(brackets, internal quotation marks, and citations omitted)

(emphasis in Amgen).

> The Rule 23(b)(3) predominance inquiry is
> "far more demanding" than Rule 23(a)'s commonality
> requirement. Amchem Prods., Inc. v. Windsor, 521
> U.S. 591, 624, 117 S. Ct. 2231, 138 L. Ed. 2d 689
> (1997). The "presence of commonality alone is not
> sufficient to fulfill Rule 23(b)(3)." Hanlon v.
> Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir.
> 1998). Rather, a court has a "duty to take a
> close look at whether common questions predominate
> over individual ones," and ensure that individual
> questions do not "overwhelm questions common to
> the class." Comcast, 569 U.S. at 34, 133 S. Ct.
> 1426 (internal quotation marks omitted). In
> short, "[t]he main concern of the predominance
> inquiry under Rule 23(b)(3) is the balance between
> individual and common issues." Wang v. Chinese
> Daily News, Inc., 737 F.3d 538, 545–46 (9th Cir.
> 2013) (internal quotation marks omitted).

In re Hyundai & Kia Fuel Econ. Litig., 881 F.3d 679, 691 (9th

Cir. 2018).

Defendants argue highly individualized inquiries will

be necessary to determine whether each Class member was injured.

Defendants also argue some Class members, such as Intervenors, suffered no injury because, on net, they enjoy less-crowded facilities more than they dislike the DRGFs. Defendants suggest no workable method to quantify the varying subjective pleasure each Class member derives from other people being deterred from accessing the Club and Resort. Nor do Defendants cite any authority suggesting such a novel inquiry is required. To the extent Defendants identify individualized issues in proving injury or damages, these issues do not overwhelm questions common to the Class. See Compton v. Countrywide Fin. Corp., 761 F.3d 1046, 1053-54 (9th Cir. 2014) (After plaintiffs show a practice is unfair or deceptive, "Hawaii courts have not set a high bar for proving" injury or damages. For example, even if a purchase is not consummated, "a consumer could recover damages for 'out-of-pocket expenses for a money order, gasoline, parking, and wear and tear on [an] automobile that resulted from [an] unfair business practice.'" (quoting Zanakis-Pico v. Cutter Dodge, Inc., 98 Hawai`i 309, 319, 47 P.3d 1222, 1232 (2002))).

Defendants next point to variation in the marketing materials, contractual language, sales presentations, and salespeople that Class members were exposed to before they purchased homes.[15] Defendants state that home purchase

_____

[15] Defendants have neither submitted any examples of later published materials shown to prospective purchasers that differ
(continued...)

29

agreements always provided Defendants a plenary right to impose
guest fees, but this right was "more explicit" in later
contractual agreements. [Mem. in Supp. of Motion at 22.]
Defendants also argue more recent purchasers had greater notice
of the 2016 DRGFs because historical increases in the DRGFs
provided notice that the DRGFs might increase further in the
future.[16] Defendants "raise issues that may [later] trigger the
formation of subclasses," but do not raise individual issues or
show that predominance is lacking. See Baker, 2014 WL 1669158,
at *13. Decertification is not required "based on speculation as
to what future subclasses will be required." See id. at *16.

Defendants next argue predominance is lacking because
Class members vary greatly in how often they have unaccompanied
and/or rental guests. This suggests individualized and/or
uncertain damages calculations may be required. Still,
decertification is not appropriate because "[t]he amount of
damages is invariably an individual question and does not defeat
class action treatment." See Yokoyama, 594 F.3d at 1094. The
Ninth Circuit has "repeatedly emphasized that uncertain damages

---

[15](...continued)
from earlier materials nor explained the significance of any such
differences.

[16] No DRGFs were charged until 2007. The fee was $30 in
2007-2011, $45 in 2012, $50 in 2013, $55 in 2014, $65 in 2015,
and up to $250 per person per day in 2016. [Fitzgerald Decl. at
¶¶ 36, 53.]

calculations should not defeat certification."  Lambert v.
Nutraceutical Corp., 870 F.3d 1170, 1182 (9th Cir. 2017).

**B.    Predominance as to Damages Methodology**

Defendants argue predominance is lacking because the
Class has not shown that "damages are capable of measurement on a
classwide basis."  See Comcast, 569 U.S. at 34.  The Ninth
Circuit has explained that it has reconciled its holding in
Yokoyama

> that uncertain damages cannot destroy class
> certification with Comcast's holding that
> plaintiffs must show that their damages are
> capable of classwide measurement. . . .  Comcast
> st[ands] only for the proposition that "plaintiffs
> must be able to show that their damages stemmed
> from the defendant's actions that created the
> legal liability."  Leyva [v. Medline Indus. Inc.],
> 716 F.3d [510,] 513-14 [(9th Cir. 2013)].

> Uncertainty regarding class members' damages
> does not prevent certification of a class as long
> as a valid method has been proposed for
> calculating those damages.  Id. at 514; see also
> Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.,
> 738 F.3d 960, 970 (9th Cir. 2013) (explaining that
> the law "requires only that damages be capable of
> measurement based upon reliable factors without
> undue speculation").  "[T]he fact that the amount
> of damage may not be susceptible of exact proof or
> may be uncertain, contingent or difficult of
> ascertainment does not bar recovery."  Pulaski [&
> Middleman, LLC v. Google, Inc.], 802 F.3d [979,]
> 989 [(9th Cir. 2015)] (quoting Marsu, B.V. v. Walt
> Disney Co., 185 F.3d 932, 939 (9th Cir. 1999));
> see also Just Film, Inc. v. Buono, 847 F.3d 1108,
> 1121 (9th Cir. 2017) (reaffirming that so long as
> the proposed damages model is attributable to the
> plaintiff's legal theory of the harm, and damages
> can be determined without excessive difficulty,
> decertification is not warranted).

Lambert, 870 F.3d at 1182 (some alterations in Lambert).  Rule
23(b)(3) only requires that the Class propose a "workable
method."  Id. at 1184.  A damages model is workable if it
"matche[s the class's] theory of liability," and is "supportable
on evidence that could be introduced at trial."  Id.  One
workable damages model is sufficient.  See id. at 1184 n.11 (not
evaluating alternative proposed damages model); Pulaski, 802 F.3d
at 989 n.9 (same).

The Class proposes six methods of calculating damages,
one of which is a full refund of DRGFs paid ("DRGF Refund
Model").[17]  [Mem. in Opp. at 30.]  Defendants have not disputed
the Class's assertion that the precise amounts owed under the
DRGF Refund Model can be calculated from Defendants' own records.
Defendants argue "determining who paid what and when would be an
inevitably individualized inquiry."  [Reply at 15.]  This
argument runs headlong into Yokoyama's holding that the need for
individual damages calculations cannot defeat class
certification.  See Yokoyama, 594 F.3d at 1094.

Defendants also contend the Class members are not

_____

[17] The Class proposes five other models of calculating
damages.  They are:  diminution in property value; refund of Club
dues; refund of home sales price; value of lost home lending
rights to non-rental guests; and lost rental income.  [Mem. in
Opp. at 30-31.]  The Court has not considered the merits of these
other five models.

entitled to receive refunds because the DRGFs were paid by guests, not Class members. But Hawai`i law allows disgorgement as a remedy. See Hawaiian Ass'n of Seventh-Day Adventists v. Wong, 130 Hawai`i 36, 49, 305 P.3d 452, 465 (2013). "'Disgorgement is an equitable remedy designed to deprive a wrongdoer of his unjust enrichment.'" Sato v. Wahiawa-Cent. Oahu Health Ctr., Inc., No. CAAP-13-0000042, 2015 WL 1231272, at *22 (Hawai`i Ct. App. Mar. 17, 2015) (quoting S.E.C. v. First City Fin. Corp., 890 F.2d 1215, 1230 (D.C. Cir. 1989)). Moreover, the Ninth Circuit has approved *cy pres*-only settlements, which cause the wrongdoer to disgorge his unjust gains, but provide no recovery for the injured. In re Google Referrer Header Privacy Litig., 869 F.3d 737, 742-43 (9th Cir. 2017). The Court need not determine damages apportionment at this stage of the litigation. The DRGF Refund Model is a workable method, and is sufficient for purposes of the predominance inquiry.

## C. **Superiority**

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." Id. at 742. Rule 23(b)(3) lists four factors pertinent to the superiority inquiry:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by

or against class members;

(C)    the desirability or undesirability of
       concentrating the litigation of the claims in
       the particular forum; and

(D)    the likely difficulties in managing a class
       action.

First, in light of the common issues of fact and law in

this case and the minor nature of any individual issues, the

Class members have a minimal interest in individually controlling

the prosecution of this case.  See Epstein, 50 F.3d at 668.

Further, no evidence shows what is the minimum claim that Class

members will assert under the DRGF Refund Model.  It is

theoretically possible that some Class members have claims of

only $250, so that individual litigation would be economically

infeasible.  See Yokoyama, 595 F.3d at 1094 (abuse of discretion

to conclude that individual adjudication was superior when

average damages were $10,000-$15,000).  Second, there is

currently no other litigation concerning this controversy.  This

"is evidence that individuals [do not] have an interest in

controlling their own litigation" in this matter.  See Moore v.

Ulta Salon, Cosmetics & Fragrance, Inc., 311 F.R.D. 590, 624

(C.D. Cal. 2015) (internal quotation marks and citation omitted).

Third, concentrating the litigation in this forum is desirable

because this case was removed under CAFA and because this Court

has already made several rulings in this case.  Fourth, there are

no apparent manageability problems.  The names of all Class

members are readily obtainable from Defendants' own records and other public records.

Defendants argue individual adjudication is superior because each Class member has a potentially large claim for diminution in property value.[18]  Under some circumstances, large individual damages may caution against finding superiority. Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1190-91 (9th Cir. 2001).  In this case, decertification is not required based on speculation large that damage claims will later be involved.  As Defendants point out, Class members are highly sophisticated and aware of this litigation.  [Mem. in Supp. of Motion at 6, 37.]  The risk is low that some absent Class members, who in fact prefer to proceed individually, will not avail themselves of the opportunity to opt out.  This risk does not outweigh the benefits of proceeding in the form of a class action.

Defendants and Intervenors argue Intervenors' opposition to this litigation shows that Class members' interest in controlling their own litigation is strong.  Intervenors' preference that this action not go forward does not undermine the benefits of this action going forward as a class action, as compared to proceeding individually.  Class members who prefer a

_____

[18] Defendants have raised non-trivial objections to the Class's proposed measure for diminution in property damages. This Court has not evaluated the merits of this proposed measure.

different litigation strategy (or none at all) are protected because they may choose to opt out.

The questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating this case.  Except as to Count I, the Class has affirmatively demonstrated compliance with Rule 23(a) and Rule 23(b)(3).

**CONCLUSION**

On the basis of the foregoing, Defendants' Motion to Decertify Class Action, filed August 15, 2017 is HEREBY DENIED. The Class has leave to file an amended complaint to add new class representatives for Count I.  If Plaintiffs do not amend their complaint to add a class representative with standing to assert Count I, and who can affirmatively demonstrate compliance with the Rule 23(a) prerequisites, before **May 1, 2018**, Count I will be decertified.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, March 28, 2018.



    /s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**CHRISTOPHER ZYDA, ETC., ET AL. VS. FOUR SEASONS HOTELS AND**

RESORTS FOUR SEASONS HOLDINGS, INC., ET AL; CIVIL 16-00591 LEK-KJM; ORDER DENYING DEFENDANTS' MOTION TO DECERTIFY CLASS ACTION