IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CHRISTOPHER ZYDA, On Behalf of Himself and All Others Similarly Situated, | ) ) ) ) | CIVIL 16-00591 LEK |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| FOUR SEASONS HOTELS AND RESORTS FOUR SEASONS HOLDINGS INC.; FOUR SEASONS HUALALAI RESORT; HUALALAI RESIDENTIAL, LLC (dba HUALALAI REALTY); HUALALAI INVESTORS, LLC; KAUPULEHU MAKAI VENTURE; HUALALAI DEVELOPMENT COMPANY; HUALALAI VILLAS & HOMES; HUALALAI INVESTORS, LLC; HUALALAI RENTAL MANAGEMENT, LLC; and DOES 1-100, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
ORGANIZED CRIME, UNIFORM LAND SALES PRACTICES ACT,
AND BREACH OF FIDUCIARY DUTY COUNTS IN CLASS PLAINTIFFS'
SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES,
DECLARATORY, AND INJUNCTIVE RELIEF, FILED APRIL 30, 2018**

On May 14, 2018, Defendants Four Seasons Hotels Ltd.,

Four Seasons Holdings, Inc. (collectively "Four Seasons

Defendants"), Hualalai Investors, LLC, Hualalai Residential LLC,

and Hualalai Rental Management, LLC (collectively "Hualalai

Defendants" and all collectively "Defendants") filed their Motion

to Dismiss Organized Crime, Uniform Land Sales Practices Act, and

Breach of Fiduciary Duty Counts in Class Plaintiffs' Second

Amended Class Action Complaint for Damages, Declaratory, and Injunctive Relief, Filed April 30, 2018 ("Motion"). [Dkt. no. 90.] Plaintiffs Christopher Zyda ("Zyda") and Carol Meyer ("Meyer" and collectively "Plaintiffs"), on behalf of themselves and all others similarly situated (all collectively "Class"), filed their memorandum in opposition on June 4, 2018, and Defendants filed their reply on June 8, 2018. [Dkt. nos. 96, 98.] The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.2(d) of the Local Rules of Practice of the United States District Court for the District of Hawai`i ("Local Rules"). Defendants' Motion is hereby granted for the reasons set forth below.

## BACKGROUND

On October 2, 2015, Zyda filed his "Class Action Complaint for Damages Declaratory and Injunctive Relief" ("Complaint") in the Circuit Court of the Third Circuit, State of Hawai`i ("state court"). [Notice of Removal of Action Pursuant to 28 U.S.C. § 1332(d) and 28 U.S.C. § 1453(b) ("Notice of Removal"), filed 11/1/16 (dkt. no. 1), Decl. of William Meheula ("Meheula Removal Decl."), Exh. 1 (Complaint).] On October 14, 2015, Zyda filed his "First Amended Class Action Complaint for Damages Declaratory and Injunctive Relief" ("First Amended Complaint") and, on October 13, 2016, the state court issued an order granting class certification ("Certification Order").

2

[Id., Exh. 2 (First Amended Complaint), Exh. 3 (Certification Order).]

On March 28, 2018, this Court issued its Order Denying Defendants' Motion to Decertify Class Action ("3/28/18 Order"). [Dkt. no. 79.[1]] The 3/28/18 Order, *inter alia*, ruled that Zyda was not an adequate representative for the Class's claims under the Condominium Property Act, Haw. Rev. Stat. Chapter 514B, and granted the Class leave to file an amended complaint adding a new class representative for that claim.

On April 30, 2018, Plaintiffs filed their Second Amended Class Action Complaint for Damages, Declaratory, and Injunctive Relief ("Second Amended Complaint"). [Dkt. no. 89.] As compared to the First Amended Complaint, the Second Amended Complaint adds Meyer as a class representative, and otherwise alleges the same facts and asserts the same causes of action as the First Amended Complaint.

According to the Second Amended Complaint, Plaintiffs own real property within the Hualalai Resort ("Resort"), which is located on the Island of Hawai`i. [Id. at ¶¶ 2-3.] The Hualalai Defendants[2] are "the owners, developers, successors in interest

_____

[1] The 3/28/18 Order is also available at 2018 WL 1528159.

[2] In this Order, the name "Hualalai Defendants" refers to Defendants Hualalai Investors, LLC, Hualalai Residential LLC, and Hualalai Rental Management, LLC. In the Second Amended Complaint, the name "the Hualalai Defendants" refers to those
(continued...)

3

to, and in house realtors for the Hualalai Resort, and control
the Hualalai Club ('Club')" and the Resort.[3] [Id. at ¶ 4.] The
Hualalai Defendants retained the Four Seasons Defendants[4] to
manage the Resort, the Club, and the hotel at the Resort.[5] [Id.
at ¶¶ 4-6.] Zyda and Meyer, respectively, purchased their home
sites in 2000 and 2003. Meyer has also owned a condominium in
Hualalai from 2013 to the present [Id. at ¶¶ 8-9.]

Plaintiffs allege Defendants induced them and others to
make purchases within Hualalai by promising, *inter alia*, that
"Plaintiffs and others would enjoy membership in the Hualalai
Club and that their family and guests would be able to enjoy

---

[2] (...continued)
three entities, as well as Defendants Kaupulehu Makai Venture,
Hualalai Development Company, and Hualalai Villas & Homes.
[Second Amended Complaint at ¶ 4.] However, the later three
entities apparently have not been served.

[3] The community that the Resort and Club are a part of will
be referred to as "Hualalai."

[4] In this Order the name "Four Seasons Defendants" refers to
Defendants Four Seasons Hotels Ltd., Four Seasons Holdings, Inc.
In the Second Amended Complaint, the name "Four Seasons
Defendants" refers to Defendant Four Seasons Holdings, Inc., as
well as Defendants Four Seasons Hotels and Resorts and Four
Seasons Hualalai Resort. [Second Amended Complaint at ¶ 5.]
Defendants Four Seasons Hotels and Resorts and Four Seasons
Hualalai Resort apparently have not been served.

[5] Citing materials submitted in support of the motion to
decertify the Class, the 3/28/18 Order noted: "The Resort hotel
is the Four Seasons Hualalai. The Resort amenities are
integrated with the hotel and include beach facilities, four
swimming pools, and restaurants. The Club amenities are distinct
from the Resort, and include a golf course, gym, clubhouse, and
canoe club." 2018 WL 1528159, at *1 n.1.

facilities in a world-class resort environment without additional guest fees." [Id. at ¶ 10.] After Plaintiffs and other Class members had committed substantial resources, "Defendants failed to maintain and provide adequate facilities to handle the growing population." [Id. at ¶ 11.] Plaintiffs allege Defendants continued to build homes in Hualalai and sell new Club memberships to non-Hualalai residents, while falsely complaining that Hualalai homeowners, their families, and their guests were overburdening the Resort. Without proper cause, Defendants discouraged Class members from using their homes and Club memberships by significantly increasing fees and charges for unaccompanied guests at the Resort ("Daily Resort Guest Fees" or "DRGFs"). Plaintiffs allege the increased DRGFs: 1) violated representations Defendants made to induce sales; and 2) were imposed to favor Defendants' own interests, regardless of the harm the increased DRGFs caused to Class members' property values and use and enjoyment of the Club and Resort. [Id. at ¶¶ 12-13.] Plaintiffs allege Defendants continue to "operate the Resort and Club in secrecy, and fail and refuse to act openly and in good faith," in violation of the Class members' rights. [Id. at ¶ 14.]

Plaintiffs assert claims for violation of the Condominium Property Act, Haw. Rev. Stat. Chapter 514B ("Count I"); [id. at ¶¶ 24-30;] violation of the Uniform Land

Sales Practices Act, Haw. Rev. Stat. Chapter 484 ("ULSPA" and "Count II"); [id. at ¶¶ 31-37;] unfair methods of competition ("UMOC") and unfair or deceptive acts or practices ("UDAP"), in violation of Haw. Rev. Stat. § 480-2 ("Count III"); [id. at ¶¶ 38-41;] promissory estoppel/detrimental reliance ("Count IV"); [id. at ¶¶ 42-45;] violation of the duty of good faith and fair dealing ("Count V"); [id. at ¶¶ 46-48;] negligent misrepresentation ("Count VI"); [id. at ¶¶ 49-55;] estoppel ("Count VII"); [id. at ¶¶ 56-59;] unjust enrichment ("Count VIII"); [id. at ¶¶ 60-64;] organized crime, pursuant to Haw. Rev. Stat. Chapter 842 ("Count IX"); [id. at ¶¶ 65-68;] and breach of fiduciary and other common law duties ("Count X"), [id. at ¶¶ 69-70].

The Class seeks: general, special, treble, and consequential damages; attorneys' fees; punitive damages; injunctive and declaratory relief; a court order requiring various reforms to Club policies; and any other appropriate relief. [Id. at pgs. 15-17.]

In the instant Motion, Defendants seek dismissal of Counts II, IX, and X.[6]

---

[6] Defendants do not discuss whether Counts II, IX, and X should be dismissed with or without prejudice.

## **STANDARD**

The Ninth Circuit has described the standard applicable to a motion under Fed. R. Civ. P. 12(b)(6) as follows:

> To survive a motion to dismiss for failure to state a claim after the Supreme Court's decisions in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) and <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), the [plaintiff's] factual allegations "must . . . suggest that the claim has at least a plausible chance of success." <u>In re Century Aluminum [Co. Sec. Litig.]</u>, 729 F.3d [1104,] 1107 [(9th Cir. 2013)]. In other words, their complaint "must allege 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" <u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 678, 129 S. Ct. 1937).

> Following <u>Iqbal</u> and <u>Twombly</u>, . . . . we have settled on a two-step process for evaluating pleadings:

>> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

> [<u>Eclectic Props. E., LLC v. Marcus & Millichap Co.</u>, 751 F.3d 990, 996 (9th Cir. 2014)] (quoting <u>Starr v. Baca</u>, 652 F.3d 1202, 1216 (9th Cir. 2011)). In all cases, evaluating a complaint's plausibility is a "context-specific" endeavor that requires courts to "draw on . . . judicial experience and common sense." <u>Id.</u> at 995-96 (internal quotation marks omitted).

<u>Levitt v. Yelp! Inc.</u>, 765 F.3d 1123, 1134-35 (9th Cir. 2014)
(some alterations in <u>Levitt</u>).

This district court has stated, "although allegations 'upon information and belief' may state a claim after <u>Iqbal</u> and <u>Twombly</u>, a claim must still be based on factual content that makes liability plausible, and not be 'formulaic recitations of the elements of a cause of action.'" <u>Klohs v. Wells Fargo Bank, N.A.</u>, 901 F. Supp. 2d 1253, 1260 n.2 (D. Hawai`i 2012) (quoting <u>Long v. Yomes</u>, 2011 WL 4412847, at *4 (D. Haw. Sept. 20, 2011) (quoting <u>Twombly</u>, 550 U.S. at 555, 127 S. Ct. 1955) (editorial mark omitted)).

## **DISCUSSION**

### I. **Count II - ULSPA**

Haw. Rev. Stat. § 484-16(a) creates liability for certain persons who, "in disposing of subdivided lands make[] an untrue statement of a material fact, or . . . omit[] a material fact required to be stated in a registration statement, an application, or public offering statement or necessary to make the statements made not misleading." Section 484-16(f) states: "No person shall be entitled to recover under this section unless the person has commenced action for such recovery within four years after the person's first payment of money to the subdivider in the contested transaction."

8

Defendants argue Plaintiffs' ULSPA claims are time-barred because they, respectively, purchased their lots in 2000 and 2003, which is more than four years before this action was commenced in 2015.  Plaintiffs contend their Count II claims did not accrue until the increased DRGFs were announced in 2015, and are thus timely under the discovery rule.  <u>See</u> <u>Thomas v. Kidani</u>, 126 Hawai`i 125, 132, 267 P.3d 1230, 1237 (2011) ("Under Hawaii's discovery rule, the statute of limitations begins to run when the plaintiff discovers or should have discovered the negligent act, the damage, and the causal connection between the former and the latter." (citation and internal quotation marks omitted)).

Plaintiffs identify no authority applying the discovery rule to ULSPA claims.  Instead, they compare ULSPA with the Condominium Property Act, which has similar limitations language.  <u>See</u> Haw. Rev. Stat. § 514B-94(b) (barring any action "for the recovery of the purchase price after two years from the date of the sale").  Plaintiffs note that a private arbitrator and a judge of the First Circuit Court of the State of Hawai`i have applied the discovery rule to claims under § 514B-94.  [Mem. in Opp. at 7 (citing Mem. in Opp., Decl. of Counsel ("Revere Decl."), Exhs. 1-3).[7]]

_____

[7] Exhibits 1, 2, and 3 are authorities not available on Westlaw or Lexis.  In <u>LoPresti v. Haseko (Hawaii), Inc.</u>, Civ. No. 13-1-195-07 GWBC, in the State of Hawai`i First Circuit Court, the circuit judge orally denied the defendants' motion for

(continued...)

Even assuming the discovery rule applies to claims under § 514B-94, Plaintiffs' ULSPA claim is distinguishable and not subject to the discovery rule. The Hawai'i Supreme Court has stated that, when construing statutes:

> First, the fundamental starting point for statutory-interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

Panado v. Bd. of Trs., Emps.' Ret. Sys., 134 Hawai'i 1, 11, 332 P.3d 144, 154 (2014) (citation omitted). Section 514B-10(a) requires that the "remedies provided by [the Condominium Property Act] shall be liberally administered to the end that the aggrieved party is put in as good a position as if the other party had fully performed." In LoPresti, the circuit court declined to "apply the . . . the statute of limitations . . .

---

[7] (...continued) summary judgment on the plaintiffs' Condominium Property Act claim. [Revere Decl., Exh. 1 (excerpts of trans. of 1/21/15 hrg. ("LoPresti Trans.")), Exh. 2 (order, filed 2/17/15, denying motion for summary judgment).] Exhibit 3 is the Partial Final Award of Arbitrator in Johnson, et al. v. Kauai Lagoons LLC, et al., DPR No. 16-0461-A, in the State of Hawai'i, with Dispute Prevention & Resolution, Inc. ("Johnson Award"). [Revere Decl., Exh. 3.] The circuit judge in LoPresti and the arbitrator in Johnson applied similar reasoning. Compare LoPresti Trans. at 7 with Johnson Award at 4-5.

literally," and concluded the "mandate [of § 514B-10(a)] requires the Court to apply the discovery rule." [LoPresti Trans. at 6-7.] Plaintiffs cite no similar rule of construction applicable to ULSPA, and this Court is aware of no basis to impose such a rule of construction on ULSPA. The plain meaning of § 484-16(f) is controlling. See Panado, 134 Hawai`i at 11, 332 P.3d at 154.

Moreover, to the extent Plaintiffs argue that, if this Court declines to apply the discovery rule to ULSPA, the result is absurd and unlikely to reflect the intention of the legislature, this Court disagrees. The legislature has enacted other statutes of repose. See, e.g., Haw. Rev. Stat. § 657-8(a) ("No action to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of any deficiency or neglect in the planning, design, construction, supervision and administering of construction, and observation of construction relating to an improvement to real property shall be commenced more than two years after the cause of action has accrued, but in any event not more than ten years after the date of completion of the improvement.").

Plaintiffs' Count II claims are time-barred because they were "commenced . . . [more than] four years after [their] first payment of money to the subdivider in the contested transaction[s]." See § 484-16(f). Count II must therefore be dismissed. Plaintiffs do not contend they also purchased other

11

subdivided property from Defendants during the limitations

period.[8]  Because it is clear that any amendment of Plaintiffs'

claims would be futile, the dismissal must be with prejudice.

See Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty., 708 F.3d

1109, 1118 (9th Cir. 2013) ("As a general rule, dismissal without

leave to amend is improper unless it is clear, upon de novo

review, that the complaint could not be saved by any amendment."

(brackets, citation and internal quotation marks omitted)).

However, because it is arguably possible for Plaintiffs to add a

new plaintiff whose ULSPA claim is not time-barred, the dismissal

is without prejudice insofar as Plaintiffs may add a new

plaintiff as to Count II only.[9]

**II.   Count IX - Organized Crime**

        In their Count IX claim, Plaintiffs allege:  "By

wrongfully seeking to deprive Plaintiffs of their property

Defendants are engaging in extortion, a prohibited offense under

---

[8] In addition to her 2003 lot purchase, in 2013, Meyer
purchased a condominium in Hualalai.  [Second Amended Complaint
at ¶ 9.]  The Court notes that Meyer's Count I claim, which
asserts liability under the Condominium Property Act, is not at
issue in the instant Motion.  Meyer does not contend her 2013
condominium purchase entitles her to relief on her Count II
claim.

[9] This Court declines to address Defendants' argument
regarding the sufficiency of the allegations of false or
misleading representations because the representations made to
Plaintiffs may not be the same as the representations that were
made to a potential new plaintiff.

HRS Chapter 842." [Second Amended Complaint at ¶ 67.] This Court has stated:

> Haw. Rev. Stat. § 842-8(c) allows an injured party to bring a civil racketeering action. It states: "Any person injured in the person's business or property by reason of a violation of this chapter may sue therefor in any appropriate court and shall recover the damages the person sustains and the cost of the suit, including a reasonable attorney's fee." Hawai`i courts look to federal Racketeer Influenced and Corrupt Organizations ("RICO") statutes in interpreting Chapter 842. See, e.g., State v. Bates, 84 Hawai`i 211, 222, 933 P.2d 48, 59 (1997) ("Insofar as this case involves one of first impression, and because HRS § 842-2 incorporated provisions of 18 U.S.C. § 1962, we look to the federal courts for guidance in cases interpreting the phrase 'associated with any enterprise' under constitutional 'void for vagueness' challenges."). The Hawai`i Supreme Court has stated: "To maintain a civil RICO claim based upon 18 U.S.C. § 1962(c) (1994), a plaintiff must prove the following elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" TSA Int'l Ltd. v. Shimizu Corp., 92 Hawai`i 243, 263, 990 P.2d 713, 733 (1999) (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985)). For Chapter 842 purposes:

> > "Racketeering activity" means any act or threat involving but not limited to murder, kidnapping, gambling, criminal property damage, robbery, bribery, extortion, labor trafficking, theft, or prostitution, or any dealing in narcotic or other dangerous drugs that is chargeable as a crime under state law and punishable by imprisonment for more than one year.

> Haw. Rev. Stat. § 842-1.

DeRosa v. Ass'n of Apartment Owners of the Golf Villas, 185 F. Supp. 3d 1247, 1262 (D. Hawai`i 2016).

First, Defendants argue that, as to Zyda, Count IX is time-barred because the statute of limitations began to run when he purchased his lot in 2000. [Mem. in Supp. of Motion at 11.] Because Chapter 842 does not specify a limitations period, a six-year statute of limitations applies. Nakamoto v. Hartley, 758 F. Supp. 1357, 1367 (D. Hawai`i 1991) (some citations omitted) (citing Haw. Rev. Stat. § 657-1(4)). To determine whether an organized crime claim is timely, courts apply the six-year statute of limitations to the alleged unlawful racketeering activity. Id. Zyda alleges he was subject to extortion in 2015, when the increased DRGFs were announced, not in 2000, when he purchased his lot. Therefore, the statute of limitations began to run on Zyda's Count IX claim in 2015. Count IX is not time-barred as to Zyda.

Next, Defendants argue Count IX fails to plausibly allege extortion. This Court agrees. This Court has stated that, without more, even showing a defendant substantially harmed a plaintiff's financial condition "is not enough to prove a racketeering claim based on extortion." DeRosa, 185 F. Supp. 3d at 1263. Pursuant to Haw. Rev. Stat. § 707-764(1)-(2), a person only commits extortion "by threatening by word or conduct to" do certain wrongful actions enumerated in paragraphs (1)(a)-(1).[10]

---

[10] In addition to certain conduct involving the deprivation of property by threatening word or conduct, extortion also
(continued...)

14

Even if defendants injure a plaintiff's "financial condition, . . . [a p]laintiff's civil racketeering claim based on alleged extortion also requires that [d]efendants obtained or exerted control of [the p]laintiff's property with the intent to **deprive him of property by threatening word or conduct**." <u>See</u> <u>DeRosa</u>, 185 F. Supp. 3d at 1263 (emphases omitted and added) (citing § 707-764(1)(l)).

At this juncture, the Court presumes the increased DRGFs announced in 2015 were wrongful and harmed Plaintiffs' financial condition. However, the Second Amended Complaint fails to allege any threatening word or conduct by which Defendants deprived Plaintiffs of property. Therefore, Count IX must be dismissed. <u>See</u> <u>Iqbal</u>, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting <u>Twombly</u>, 550 U.S. at 570)); <u>Lehman v.</u> <u>Nelson</u>, 862 F.3d 1203, 1211 (9th Cir. 2017) ("Federal Rule of Civil Procedure 8(a)(2) requires that the allegations in the complaint give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." (internal quotation marks and citation omitted)). The requirement that a

---

[10] (...continued) includes the "extortionate extension of credit." § 707-764(3). Plaintiffs do not allege Defendants wrongfully extended credit.

15

complaint plead facts showing a plausible entitlement to relief
prevents

> a plaintiff with a largely groundless claim [from]
> be[ing] allowed to take up the time of a number of
> other people . . . . So, when the allegations in
> a complaint, however true, could not raise a claim
> of entitlement to relief, this basic deficiency
> should . . . be exposed at the point of minimum
> expenditure of time and money by the parties and
> the court.

Twombly, 550 U.S. at 558 (internal citations and quotation marks
omitted).

Plaintiffs argue the Second Amended Complaint "shows
that extortion has occurred[ because it alleges] the defendants
are preventing Plaintiffs from exercising their property rights
by illegally demanding money they are not entitled to." [Mem. in
Opp. at 13.] Even if the Second Amended Complaint gave
Defendants fair notice (which it does not) that Plaintiffs allege
extortion on the theory that Defendants announced they would
wrongfully impose increased DRGFs, and then later did so,
Count IX would still fail to allege extortion. Under § 707-
764(1)-(2), extortion is limited to claims that property was
deprived "by threatening word or conduct" in one of twelve,
exhaustively enumerated ways. The first eleven circumstances
plainly do not apply. See § 707-764(1)(a)-(k) (listing, *inter
alia*, causing bodily injury, committing a crime, and bringing
about a strike). In addition, extortion includes "any other act
that would not in itself substantially benefit the defendant but

16

that is calculated to harm substantially" another person in certain ways. § 707-764(1)(l) Plaintiffs allege Defendants increased the DRGFs "to favor the interests of defendants regardless of the harm" to class members. [Second Amended Complaint at ¶ 13.] Without more, under § 707-764(1)(l), announcing and implementing the increased DRGFs is not extortion because the increased DRGFs "would . . . in itself substantially benefit the [D]efendant[s]." See § 707-764(1)(l). Even assuming the increased DRGFs were wrongful, extortion did not occur merely because Defendants provided notice, rather than increasing the DRGFs by surprise. Because it is at least theoretically possible that Plaintiffs can cure the defects in their Chapter 842 claim in a third amended complaint, Count IX is dismissed without prejudice.

## III. **Count X - Breach of Fiduciary Duty**

In their Count X claim, Plaintiffs allege: "Due to the Defendants exclusive [sic] control over the Resort, the Club and their actions, inactions representations and omissions, defendants owe fiduciary and other common law duties to the Class, including but not limited to those set forth in the Restatement, 3d of Property. [sic] Servitudes."[11] [Second

---

[11] The Restatement (Third) of Property: Servitudes § 6.20 states:

Until the developer relinquishes control of the
(continued...)

17

Amended Complaint at ¶ 70 (emphasis in original).]  Further,

Plaintiffs allege they "are entitled to general, special and

punitive damages as a result of the breach."  [Id. at ¶ 71.]

---

[11] (...continued)
association to the members, the developer owes the
following duties to the association and its
members:

(1) to use reasonable care and prudence in
managing and maintaining the common property;

(2) to establish a sound fiscal basis for
the association by imposing and collecting
assessments and establishing reserves for the
maintenance and replacement of common
property;

(3) to disclose the amount by which the
developer is providing or subsidizing
services that the association is or will be
obligated to provide;

(4) to maintain records and to account for
the financial affairs of the association from
its inception;

(5) to comply with and enforce the terms of
the governing documents, including design
controls, land-use restrictions, and the
payment of assessments;

(6) to disclose all material facts and
circumstances affecting the condition of the
property that the association is responsible
for maintaining; and

(7) to disclose all material facts and
circumstances affecting the financial
condition of the association, including the
interest of the developer and the developer's
affiliates in any contract, lease, or other
agreement entered into by the association.

Defendants seek dismissal of Count X on the grounds that Plaintiffs make erroneous factual allegations. According to Plaintiffs, the Hualalai Defendants "are and were at all relevant times the owners, developers, . . . and in house realtors for the Hualalai Resort." [Second Amended Complaint at ¶ 4.] In the instant Motion, Defendants argue this allegation is erroneous because certain Defendant entities neither sold Plaintiffs their lots nor "represented Plaintiffs in any transaction. Accordingly, the [Second Amended Complaint] does not allege that Movants were involved with Plaintiffs as seller, real estate broker or rental manager." [Mem. in Supp. of Motion at 14.] However, the Second Amended Complaint plainly does make this allegation. On a motion to dismiss, these factual allegations are entitled to a presumption of truth. See Iqbal, 556 U.S. at 680 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); see also Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010) ("[G]enerally the scope of review on a motion to dismiss for failure to state a claim is limited to the Complaint."). For purposes of the instant Motion, the Court does not consider Defendants' arguments disputing the truth of Plaintiffs' factual allegations.

Next, Defendants argue, even if they were developers, and even if the Restatement (Third) of Property: Servitudes applies, they owed Plaintiffs no fiduciary duty. Defendants point to comment a to the Restatement (Third) of Property: Servitudes § 6.20, which states: "The primary relationship between the developer and the people who purchase the lots or units is vendor-purchaser. . . . [T]he developer does not occupy a fiduciary relationship to the purchaser." Plaintiffs point out that the same comment also states: "The developer's relationship to the association is a fiduciary relationship during the period that the developer controls the association." <u>Id.</u> Plaintiffs also point out that the Hawai`i Intermediate Court of Appeals has stated: "The fiduciary nature of the relationship between an association and its members might, under some circumstances, provide a basis to impose an affirmative duty upon the association to safeguard its members." <u>Memminger v. Summit at Kaneohe Bay Ass'n</u>, No. 30383, 2013 WL 2149732, at *2 (Hawai`i Ct. App. May 17, 2013) (internal citation omitted). Plaintiffs' authority is inapposite because it relates, respectively, to duties owed by a developer to an association and to duties owed by an association to its members. However, none of the parties in this litigation is an association. Plaintiffs fail to establish that Defendants owed them, or any other member of the

Class, a fiduciary duty. The portion of Count X alleging breach
of fiduciary duty must be dismissed.

Although it is not clear, Plaintiffs appear to argue
that, regardless of whether Defendants owed fiduciary duties,
Defendants have violated other duties recognized in the
Restatement (Third) of Property: Servitudes. [Mem. in Opp. at
15-16 n.3 (citing Restatement (Third) of Property: Servitudes
§ 6.20).] Plaintiffs' complaint, and not their memorandum in
opposition to a motion to dismiss, must give Defendants "fair
notice of what the plaintiff's claim is and the grounds upon
which it rests." See Lehman, 862 F.3d at 1211 (internal
quotation marks and citation omitted)). Apart from pointing to
the entirety of the common law and the entirety of the
Restatement (Third) of Property: Servitudes, the Second Amended
Complaint does not indicate what duties Defendants allegedly
breached so as to entitle Plaintiffs to relief on their Count X
claim. The portion of Count X alleging that Defendants breached
other common law duties must also be dismissed. Moreover, even
if this Court considered Plaintiffs' memorandum in opposition, it
is still not clear which of the seven duties recognized in § 6.20
of the Restatement (Third) of Property: Servitudes was allegedly
breached. However, because it is at least theoretically possible
that Plaintiffs can cure these defects by amendment, the
dismissal of Count X is without prejudice.

The Court need not address Defendants' argument that Count X must be dismissed because Plaintiffs fail to establish that Hawai`i has adopted the whole of the Restatement (Third) of Property: Servitudes. An amended complaint may clarify which duties Defendants allegedly owed to Plaintiffs, and which factual allegations demonstrate Plaintiffs' entitlement to relief for the breach of those duties. The legal sufficiency of Plaintiffs' Count X claim depends, in part, on whether the specific duty Count X of the third amended complaint alleges was breached is a duty recognized in Hawai`i law. This Court need not address whether every duty recognized in the Restatement (Third) of Property: Servitudes is recognized under Hawai`i law.

## CONCLUSION

On the basis of the foregoing, Motion to Dismiss Organized Crime, Uniform Land Sales Practices Act, and Breach of Fiduciary Duty Counts in Class Plaintiffs' Second Amended Class Action Complaint for Damages, Declaratory, and Injunctive Relief, Filed April 30, 2018, filed May 14, 2018 is HEREBY GRANTED, and Counts II, IX, and X are HEREBY DISMISSED. The dismissal of Plaintiffs' claims in Count II is WITH PREJUDICE, but the dismissal is WITHOUT PREJUDICE insofar as Plaintiffs have leave to add a new plaintiff as to Count II only. The dismissal of Counts IX and X is WITHOUT PREJUDICE.

If Plaintiffs choose to file a third amended complaint, they must do so by **October 23, 2018**.  Plaintiffs are cautioned that they only have leave to make amendments to the Second Amended Complaint specifically addressing the issues discussed in the instant Order.  If Plaintiffs make any additional amendments in the third amended complaint, the third amended complaint may be stricken in its entirety.  If Plaintiffs fail to file their third amended complaint by **October 23, 2018**, the claims that were dismissed without prejudice in the instant Order will be automatically dismissed with prejudice.

Because Plaintiffs have been given leave to file a third amended complaint, Defendants are not required to file answers to the Second Amended Complaint.  If Plaintiffs file a third amended complaint, the answers will be due in the normal course.  If Plaintiffs do not file a third amended complaint by **October 23, 2018**, Defendants must file an answer to the Second Amended Complaint by **November 13, 2018**.

The parties are cautioned that, any party files a motion for reconsideration of the instant Order, it will not affect any of the filing deadlines set forth in the instant Order.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, September 27, 2018.



 /s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

CHRISTOPHER ZYDA, ETC., ET AL. VS. FOUR SEASONS HOTELS AND
RESORTS FOUR SEASONS HOLDERS, INC., ET AL; CIVIL 16-00591 LEK-
KJM; ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ORGANIZED
CRIME, UNIFORM LAND SALES PRACTICES ACT, AND BREACH OF FIDUCIARY
DUTY COUNTS IN CLASS PLAINTIFFS' SECOND AMENDED COMPLAINT FOR
DAMAGES, DECLARATORY, AND INJUNCTION RELIEF, FILED APRIL 30, 2018