UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| CHRISTOPHER ZYDA, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED,<br><br>    Plaintiffs,<br><br> vs.<br><br>FOUR SEASONS HOTELS AND RESORTS, FOUR SEASONS HOLDINGS, INC., FOUR SEASONS HUALALAI RESORT, HUALALAI RESIDENTIAL, LLC, (DBA HUALALAI REALTY); HUALALAI INVESTORS, LLC, KAUPULEHU MAKAI VENTURE, HUALALAI DEVELOPMENT COMPANY, HUALALAI VILLAS & HOMES, HUALALAI INVESTORS, LLC, HUALALAI RENTAL MANAGEMENT, LLC, DOES 1-100,<br><br>    Defendants. | CIV. NO. 16-00591 LEK-RT |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

On April 3, 2019, Defendants Four Seasons Hotels Ltd.;

Four Seasons Holdings, Inc.; Hualalai Investors, LLC; Hualalai

Residential LLC; and Hualalai Rental Management, LLC

(collectively "Defendants") filed their Motion for Partial

Summary Judgment ("Motion"). [Dkt. no. 155.] Plaintiffs

Christopher Zyda ("Zyda") and Carol Meyer ("Meyer" and

collectively "Plaintiffs"), on behalf of themselves and all

others similarly situated (all collectively "Class"), filed

their memorandum in opposition on May 10, 2019, and Defendants filed their reply on May 17, 2019. [Dkt. nos. 174, 179.] Intervenors James R. Mahoney, Ann Marie Mahoney, Judith Runstad, H. Jon Runstad, Jonathan Seybold, Patricia Seybold, David Keyes, Doreen Keyes, Julie Wrigley, Kevin Reedy, Lynn Reedy, Bradley Chipps, and J. Orin Edson ("Intervenors") filed their statement of no position on May 10, 2019. [Dkt. no. 173.] This matter came on for hearing on May 31, 2019. On June 6, 2019, this Court issued an entering order informing the parties of its rulings on the Motion. [Dkt. no. 197.] The instant Order supersedes that entering order. Defendants' Motion is hereby denied as to the unfair or deceptive acts or practices claim and granted as to the claims of promissory estoppel, detrimental reliance, violation of the duty of good faith and fair dealing, negligent misrepresentation, estoppel, and unjust enrichment.

## BACKGROUND

The instant case arises from the policy change regarding the daily fees for renters and unaccompanied guests at the Hualalai Resort ("Resort") that was announced in 2015 ("DRGF"). The operative pleading at the time Defendants filed the Motion was Plaintiffs' Second Amended Class Action Complaint for Damages, Declaratory, and Injunctive Relief ("Second Amended Complaint"), filed on April 30, 2018. [Dkt. no. 89.] However, pursuant to the parties' stipulation, and Zyda filed a Third

2

Amended Class Action Complaint for Damages and Declaratory Relief ("Third Amended Complaint") on behalf of the Class.[1] [Dkt. nos. 203 (Third Amended Complaint), 204 (6/14/19 Stipulation and Order).] As stipulated by the parties, the instant Motion applies to the Third Amended Complaint, as it is not materially different from the Second Amended Complaint. [6/14/19 Stipulation and Order at ¶ 3.]

The Third Amended Complaint alleges the following claims: unfair methods of competition ("UMOC") and unfair or deceptive acts or practices ("UDAP"), in violation of Haw. Rev. Stat. § 480-2 ("Count III"); promissory estoppel/detrimental reliance ("Count IV"); violation of the duty of good faith and fair dealing ("Count V"); negligent misrepresentation ("Count VI"); estoppel ("Count VII"); and unjust enrichment ("Count VIII").[2]

Many of the facts relevant to the instant Motion are undisputed. Zyda purchased a lot in the Resort in 2000.

---

[1] Meyer is no longer named as a plaintiff/Class representative in this case. All subsequent references to "Plaintiff" will refer to Zyda, and the memorandum in opposition to the Motion will be treated as if it was filed solely by Zyda.

[2] The Third Amended Complaint identifies Counts I, II, IX, and X, but does not reallege them. [Third Amended Complaint at pgs. 6, 11.] Those claims were previously disposed of, and Zyda states that he reserves the right to appeal the disposition of those claims. [Id. at pgs. 6-7 nn.1-2, pg. 11, nn.4-5.]

[Defs.' concise statement of facts ("Motion CSOF"), filed 4/3/19 (dkt. no. 156), at ¶ 1; Pltfs.' concise statement of facts ("Opp. CSOF"), filed 5/10/19 (dkt. no. 175) at ¶ 1 (stating Defs.' ¶ 1 is undisputed).] The Master Declaration of Protective Covenants, Conditions and Restrictions and Reservation of Easements for Hualalai at Historic Ka`upulehu, recorded in the State of Hawai`i Bureau of Conveyances on July 31, 1996 ("Hualalai CCRs"), states:

> All Lots and Condominiums shall be improved and used solely for single-Family Residential use; provided, however, that this provision shall not preclude any Owner in any Residential Area from renting or leasing all of his Lot or Condominium by means of a written lease or rental agreement subject to the Restrictions. . . .

[Mem. in Opp., Decl. of P. Kyle Smith ("Smith Decl."), Exh. 1 (excerpts of Hualalai CCRs) at 68, § 2.1.]

In connection with the purchase of his Resort lot, Zyda executed a Lot Purchase and Sale Agreement ("LPSA"). [Motion CSOF at ¶ 2; Opp. CSOF at ¶ 2; Motion, Decl. of Brett R. Tobin ("Tobin Decl."), Exh. 1 (letter dated 3/29/00 to Zyda and Paul Fadoul from Wendelin L. Campbell, Principal Broker/In-House Counsel for Hualalai Realty, Inc., transmitting documents) at ZYDA000564-70 (LPSA).]

The LPSA refers to the Rules and Regulations for the Hualalai Amenity Facilities ("Amenity Rules"), and the Amenity Rules were given to Zyda, along with various other documents, at

4

the time he purchased his Resort lot.[3]  [Motion CSOF at ¶ 4; Opp.

CSOF at ¶ 4; Tobin Decl., Exh. 3 (Amenity Rules).]  In 2002,

during the initial membership offering, Zyda joined the Club,

and he signed a Hualalai Club Membership Agreement ("HCMA"),

acknowledging that he read, understood, and agreed to be bound

by the "Membership Plan Documents."  [Motion CSOF at ¶¶ 5-6;

Opp. CSOF at ¶¶ 5-6; Tobin Decl., Exh. 4 (HCMA) at 2.]  The

"Membership Plan Documents" are "The Hualalai Club Membership

Plan and Rules and Regulations."  [Tobin Decl., Exh. 4 at 1.]

In December 2006, a letter was sent to all Resort owners and

Club members notifying them about the fee that would be charged

to all unaccompanied guests beginning in 2007.  [Motion CSOF at

¶ 7; Opp. CSOF at ¶ 7; Tobin Decl., Exh. 7.]

     Defendants now seek summary judgment as to all claims,

except for the UMOC claim.

---

[3] The community that the Resort, the Hualalai Club ("Club"),
and the Four Seasons Hotel at Hualalai ("Hotel") are a part of
will be referred to as "Hualalai."  "The Resort amenities are
integrated with the [H]otel and include beach facilities, four
swimming pools, and restaurants.  The Club amenities are
distinct from the Resort, and include a golf course, gym,
clubhouse, and canoe club."  Order Denying Defs.' Motion to
Decertify Class Action, filed 3/28/18 (dkt. no. 79) ("3/28/18
Order"), at 3 n.1, *also available at* 2018 WL 1528159, *appeal
denied*, No. 18-80045, 2018 WL 3391612 (9th Cir. June 28, 2018).

**DISCUSSION**

I. <u>**UDAP Claim**</u>

   The Hawai`i Supreme Court has stated: "a deceptive act or practice is (1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances where (3) the representation, omission, or practice is material." <u>Courbat v. Dahana Ranch, Inc.</u>, 111 Hawai`i 254, 262, 141 P.3d 427, 435 (2006) (brackets, citation, and internal quotation marks omitted). This "test is an objective one, turning on whether the act or omission is likely to mislead consumers, as to information important to consumers, in making a decision regarding the product or service." <u>Id.</u> (citations and internal quotation marks omitted).

   Count III is silent as to what specific acts or omissions the UDAP claim is based upon. <u>See</u> Third Amended Complaint at ¶¶ 21-24. The basis of Zyda's UDAP claim, and his case as a whole, must be gleaned from the evidence that he has presented: Zyda testified that, before he purchased his lot in the Resort, he was told his future renters and guests would be able to use all of the Resort's amenities without paying any fees. [Tobin Decl., Exh. 2 (trans. of 7/28/16 depo. of Zyda ("Zyda Depo.")) at 32.] Zyda has presented evidence that other Class members were given the same, or similar, information. <u>See</u> Smith Decl., Exh. 10 (Decl. of Donald Evans, dated 9/27/17

6

("Evans Decl.")) at ¶ 5; id., Exh. 11 (Decl. of Jim Ullakko,

dated 9/27/17, ("Ullakko Decl.")) at ¶ 5; see also id., Exh. 3

(untitled, 11/17/15 declaration of Tom Conom ("Conom Decl.")) at

¶¶ 4-5.[4]

Initially, the periodic increases in the DRGF were in

the range of five to ten dollars. [Pltfs.' Submission of

Excerpts of the May 9, 2019 Depo. Trans. of Russell Schoon,

filed 5/28/19 (dkt. no. 187) ("Depo. Submission"), Decl. of

Terrance M. Revere ("Revere Suppl. Decl."), Exh. A ("Schoon

Depo.") at 19.[5]] At one point, the DRGF was increased to forty

dollars; [id. at 57 (questioning of Mr. Schoon regarding a

statement written by Jeremy Sosner);] on January 16, 2012, the

DRGF was forty-five dollars; [id. at 81-82;] and it was fifty

_____

[4] Zyda's attachment of his supporting materials to his
memorandum in opposition violated Local Rule 56.1(h), which
states: "Affidavits or declarations setting forth facts and/or
authenticating exhibits, as well as exhibits themselves, **shall
only be attached to the concise statement.**" (Emphasis added.)
Although this Court has considered Zyda's improperly filed
supporting materials, Zyda and his counsel are cautioned that
future failures to follow the applicable rules may result in
sanctions, including, but not limited to, striking non-compliant
documents.

[5] Mr. Schoon is the Director of Hualalai Villas and Homes
("HVH"). He is also a licensed real estate broker, and has been
HVH's principal broker since 2010. HVH contracts with Resort
owners to provide property/rental management services. [Defs.'
suppl. concise statement of facts in supp. of Motion ("Reply
CSOF"), filed 5/17/19 (dkt. no. 180), Decl. of Russell Schoon
("Schoon Decl.") at ¶¶ 1-2.]

dollars on July 15, 2013, [id. at 104]. The increase to forty

dollars coincided with the completion of spa facilities, and the

completion of the spa was used as a "justification" for the DRGF

increase. [Id. at 57.]

In 2015, a policy change was announced under which the

DRGF were as high as $250 during certain times of the year

("2015 DRGF Policy"). [Id. at 105.] However, there has also

been testimony that, at other times of the year, the DRGF

increased to only $65 when the 2015 DRGF Policy took effect.

[Smith Decl., Exh. 5 (excerpts of trans. of 4/4/19 depo. of

Patrick Fitzgerald ("Fitzgerald Depo.")) at 211.[6]]

Mr. Schoon acknowledged that, for the times when the

DRGF became $250, "the rate did increase dramatically." [Schoon

Depo. at 19.] Mr. Schoon also acknowledged that he is not aware

of another Resort that charges its guests a $250 per day fee.

[Id. at 105.] Zyda contends Defendants' hidden purpose behind

this dramatic increase is to limit the number of the Resort

owners' renters and guests, which allows the Hotel guests

greater access to the Resort amenities.

Since the imposition of the 2015 DRGF Policy, Resort

owners still rent their homes. However, unless the DRGF is

---

[6] Patrick Fitzgerald is the Resort's president and chief
executive officer. 3/28/18 Order, 2018 WL 1528159, at *1 n.1.

paid, their renters cannot access the Resort amenities and are treated the same renters of Resort owners who are not Club members. See Smith Decl., Exh. 2 (excerpts of trans. of 10/5/16 depo. of Robert Kildow ("Kildow Depo.")) at 74-75 ("[T]echnically, you can rent your place without being a member of the Club, but your renters don't have access to anything so it sort of defeats the purpose. Nobody is required to get a membership unless you, actually, want to go outside and do something.").[7]  Evidence submitted points to the DRGFs arguably impairing Resort owners' ability to rent their homes:

> 7.  I have been financially harmed by the imposition of the increased resort fees and restrictions on the resort amenities.
>
> 8.  As a direct result of the increased resort fees and restrictions, the rental of my unit has been limited and I was forced to notify all of my potential renters of the resort fee that could be up to $250.00 per person per day to use the resort amenities.  This directly impacted my rental sales as many potential renters were not willing to pay this extra cost on top of the rental cost of the unit.
>
> 9.  I was forced to lower my rental rate up to $200.00 from $400.00 per day to maintain some sort of rental income.

---

[7] Robert Kildow is the Director of Residential Sales for Hualalai Investors, LLC; Hualalai Residential LLC; and Hualalai Rental Management, LLC.  See 3/28/18 Order, 2018 WL 1528159, at *7.

[Evans Decl. at ¶¶ 7-9.]  Other Class members gave similar

testimony.  [Smith Decl., Exh. 9 (undated, unsigned Decl. of

Steve Schmautz) at ¶¶ 9-11; Ullakko Decl. at ¶¶ 8-10.]

In considering Defendants' Motion, this Court must

view the evidence in the light most favorable to Zyda, as the

nonmoving party.  See Crowley v. Bannister, 734 F.3d 967, 976

(9th Cir. 2013).  While the evidence of Defendants' alleged

scheme to increase the Hotel guests' access to the amenities

appears infirm, it does minimally manage to establish a material

"representation, omission, or practice" for purposes of a

summary judgment motion.  See Courbat, 111 Hawai`i at 262, 141

P.3d at 435 (citation and quotation marks omitted).  Even so,

summary judgment must be denied largely because the remaining

element of a UDAP claim – that the "representation, omission, or

practice" was "likely to mislead consumers acting reasonably

under the circumstances" – requires the application of an

objective standard that "is ordinarily for the trier of fact."

Id. at 263, 141 P.3d at 436.  "Reasonableness can only

constitute a question of law suitable for summary judgment when

the facts are undisputed and not fairly susceptible of divergent

inferences because where, upon all the evidence, but one

inference may reasonably be drawn, there is no issue for the

jury."  Id. at 263, 141 P.3d at 436 (brackets, citation, and

internal quotation marks omitted).  While Zyda received

documents expressly stating the Resort management's right to impose guest fees for the use of the Resort amenities, when the record is viewed as a whole, genuine issues of material fact exist which preclude summary judgment as to whether Defendants' "representation, omission, or practice" was "likely to mislead consumers acting reasonably under the circumstances." See Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

Genuine issues of material fact also exist as to whether the UDAP claim was brought within the statute of limitations. Chapter 480 claims, including UDAP claims and UMOC claims, are subject to a four-year statute of limitations. Haw. Rev. Stat. § 480-24; see also Chung v. Vistana Vacation Ownership, Inc., CIV. NO. 18-00469 LEK-RT, 2019 WL 1441596, at *4 (D. Hawai`i Mar. 29, 2019) ("With regard to UDAP claims, . . . the limitations period begins to run upon the occurrence of the defendant's alleged violation, not the date of an injury." (citation and internal quotation marks omitted)). These issues are: 1) when the statute of limitations on Zyda's UDAP claim began to run; and 2) if Zyda's UDAP claim is untimely, whether any other Class member has a timely UDAP

claim.[8]  For instance, did the statute of limitations start to run when any fees were first imposed?  If so, then it would appear that the UDAP and UMOC claims were untimely brought for those Class members who had purchased before the fees were first imposed.

Defendants' request for summary judgment as to Zyda's UDAP claim in Count III is denied.  Further, because the analysis of the Class members' UDAP claims are the same, Defendants' Motion is also denied as those claims.

## II.  **Equitable Claims**

Counts IV, VII, and VIII are equitable claims.  This district court has recognized that:

> Hawai`i law has approved "the principle, long-invoked in the federal courts, that 'equity has always acted only when legal remedies were inadequate.'"  [Porter v. Hu, 116 Hawai`i 42, 55, 169 P.3d 994, 1007 (Ct. App. 2007)] (quoting Beacon Theatres, Inc. v. Westover, 359 U.S. 500,

---

[8] The Court notes that, at trial, the statute of limitations issue may need to be addressed as to the UMOC claim, perhaps in the context of a Fed. R. Civ. P. 50 motion.  Likewise, the UMOC and UDAP claims may require an election.  A plaintiff may bring a UMOC claim based on the same conduct that supports his UDAP claim.  Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc., 113 Hawai`i 77, 113, 148 P.3d 1179, 1215 (2006).  However, to the extent the plaintiff's damages for his UMOC claim are the same as his damages for his UDAP claim, an election may be required and/or recovery may not be cumulative.  See generally Haw. Rev. Stat. § 480-13 (regarding remedies for Chapter 480 claims).  The parties will be expected to address the points raised here in the proposed jury instructions and proposed special jury verdict forms.

509, 79 S. Ct. 948, 3 L. Ed. 2d 988 (1959)).  The
absence of an adequate remedy at law, therefore,
is the "necessary prerequisite" to maintaining
equitable claims.  Id. (quoting Bd. of Dirs. of
the Ass'n of Apt. Owners of Regency Tower Condo.
Project v. Regency Tower Venture, 2 Haw. App.
506, 635 P.2d 244, 249 (1981)).

Equitable remedies are not available when an
express contract exists between the parties
concerning the same subject matter.  See id.  The
purpose of the rule is to guard against the use
of equitable remedies to "distort a negotiated
arrangement by broadening the scope of the
contract."  Gibbs-Brower Intern. v. Kirchheimer
Bros. Co., 611 F. Supp. 122, 127 (D.C. Ill. 1985)
(analyzing Illinois law) (citation omitted).
Where the parties to a contract have bargained
for a particular set of rights and obligations,
all claims involving those express rights and
obligations properly lie in contract law and not
in equity.

Sung v. Hamilton, 710 F. Supp. 2d 1036, 1064 (D. Hawai`i 2010)

(some citations omitted).

In Porter, the Hawai`i Intermediate Court of Appeals

("ICA") held that: the trial court did not abuse its discretion

when it ruled that an unjust enrichment remedy was appropriate

because the plaintiffs had no adequate legal remedy; and the

trial court did not err when it allowed the plaintiffs to make a

post-verdict election between the contract remedy, the tortious

interference remedy, and the unjust enrichment remedy.  Porter,

116 Hawai`i at 56, 169 P.3d at 1008.[9]

---

[9] For the breach of contract claim, the jury awarded damages
of one dollar to each of the five plaintiffs against their
(. . . continued)

The ICA "endorse[d the] application" of the principle
that no adequate legal remedy exists where "the contract did not
provide for the redress of the specific harm done." Id. at 55,
169 P.3d at 1007.  Zyda argues that he does not have an adequate
legal remedy because the remedies for his other claims do not
include the disgorgement of Defendants' earnings resulting from
Defendants' improper actions.  See id. at 56, 169 P.3d at 1008
("'[t]he objectives of the two remedies are different, however:
in the damage action the plaintiff seeks to recover for the harm
done to him, whereas in the restitution action he seeks to
recover the gain acquired by the defendant through the wrongful
act'" (alteration in Porter) (quoting 1 George E. Palmer, *The
Law of Restitution* § 2.1, at 51 (1978))).  Zyda's reliance on
Porter is misplaced.  Porter is inapplicable because the ICA's

---

former employer, American Insurance Agency ("AIA").  For the
tortious interference claim, the jury awarded $50,859 to the
plaintiffs, collectively, against Servco Pacific Inc.
("Servco"), AIA's parent company.  The trial court entered an
unjust enrichment award for each of the plaintiffs, totaling
$567,104.50, against AIA and Servco, jointly and severally.
Porter, 116 Hawai`i at 46-48, 169 P.3d at 998-1000.  The jury
had returned findings as to the plaintiffs' damages for their
unjust enrichment claim, but the findings were merely advisory
because the claim sought equitable remedies, for which there is
no right to a jury trial.  Id. at 48, 57, 169 P.3d at 1000,
1009.  The trial court thereafter issued findings of fact and
conclusions of law as to the unjust enrichment claim.  Id. at
52, 169 P.3d at 1004.

analysis was solely as to whether the plaintiffs had an adequate **tort** remedy.  See id.

Unlike the case at hand, the factual basis of the plaintiffs' tortious interference claim was the same as that of their unjust enrichment claim, *i.e.*, the defendants deprived the plaintiffs of plaintiffs' books of business after the terminating plaintiffs' employment by diverting their clients from them through intentional misrepresentations.  Id.; see also id. at 51, 169 P.3d at 1003.

The trial court in Porter "recognized that the contract did not expressly address the compensation of an agent who wrongfully lost his book of business as a result of the parent insurer's misconduct," and the ICA noted that this conclusion of law was not contested on appeal.  Porter, 116 Hawai`i at 55, 169 P.3d at 1007.  Further, the ICA held that the defendants failed to show the employment contracts addressed the conduct which was the basis of the unjust enrichment claim.  Id. at 55-56, 169 P.3d at 1007-08.

Here, Zyda's equitable claims are based upon his position that, through the 2015 DRGF Policy, Defendants have effectively deprived him of a right provided in the Hualalai CCRs – his right to rent his Resort home.  Zyda could have brought a breach of contract claim based on these same facts. See Brown v. Porter McGuire Kiakona & Chow, LLP, CIVIL 16-00448

LEK-KJM, 2017 WL 3763843, at *8 (D. Hawai`i Aug. 30, 2017) ("[a] condominium's governing documents are contractual obligations between the condominium association and a condominium owner" (citation and internal quotation marks omitted)).  Because Zyda's equitable claims are based on the same facts as his breach of contract claim, he has an adequate legal remedy and thus his equitable claims cannot stand.  <u>See</u> <u>Kona's Best Nat.</u> <u>Coffee LLC v. Mountain Thunder Coffee Plantation Int'l, Inc.</u>, NO. CAAP-12-0000593, 2017 WL 3310451, *20 (Hawai`i Ct. App. Aug. 2, 2017) (affirming the dismissal of the defendants' counterclaims for promissory estoppel because the defendants "had an adequate remedy at law based on their Breach of Contract Claims"); <u>Okamura v. Williams</u>, No. 28814, 2011 WL 661796, at *4 (Hawai`i Ct. App. Feb. 24, 2011).  That the remedies Zyda could have obtained in a breach of contract claim would be different from those remedies which could be obtained in equitable claims is of no relevance.  Zyda cannot bring equitable claims "to distort a negotiated arrangement by broadening the scope of the contract."  <u>See</u> <u>Sung</u>, 710 F. Supp. 2d at 1064 (citation and internal quotation marks omitted).  Because the breach of contract claim which could have been brought is an adequate remedy at law, it is not necessary to address whether any tort claim or statutory claim is also an adequate remedy at law.

There are no genuine issues of material fact, and
Defendants are entitled to judgment as a matter of law as to
Zyda's claims in Counts IV, VII, and VIII.  Further, the
analysis of the Class members' claims is the same, and
Defendants are entitled to summary judgment as to those claims
as well.  In light of these rulings, it is not necessary to
address the statute of limitations issue.

## III. Claim for Violation of the Duty of Good Faith and Fair Dealing

Count V alleges that, "[d]ue to the nature of
Defendants' control of the Resort and the relationship of the
parties, Defendants owed the Class a duty of good faith and fair
dealing and have breached that duty."  [Third Amended Complaint
at ¶ 30.]  Under Hawai`i law, "every contract contains an
implied covenant of good faith and fair dealing that neither
party will do anything that will deprive the other of the
benefits of the agreement."  Young v. Allstate Ins. Co., 119
Hawai`i 403, 427, 198 P.3d 666, 690 (2008) (citations and
quotation marks omitted).  A bad faith tort claim is not
cognizable because Hawai`i law does "not recognize[] such a
claim outside of the insurance context or, perhaps a situation
involving a special relationship[.]"  Martin v. Hotel & Transp.
Consultants, Inc., Civ. No. 17-00088 JMS-KSC, 2018 WL 2470981,
at *5 (D. Hawai`i June 1, 2018) (internal quotation marks and

some citations omitted) (citing Francis v. Lee Enters. Inc., 89
Haw. 234, 238-39, 971 P.2d 707, 711-12 (1999); Best Place, Inc.
v. Penn Am. Ins. Co., 82 Hawai`i 120, 123-24, 920 P.2d 334, 337-
38 (1996)).

Zyda has affirmatively represented that Count V
asserts a tort claim.  It is not a bad faith claim in the
insurance context.  Thus, Zyda's bad faith tort claim fails as a
matter of law unless there is a special relationship between him
and Defendants.  "Hawaii courts have noted that 'other
jurisdictions recognizing the tort of bad faith []limit such
claims to the insurance context or situations involving special
relationships characterized by elements of fiduciary
responsibility, public interest, and adhesion.'"  Fabian v.
Guild Mortg. Co., No. 13-00585 LEK-KSC, 2014 WL 12573004, at *11
(D. Hawai`i Feb. 11, 2014) (internal quotation marks, some
brackets, and some citations omitted) (quoting Francis v. Lee
Enters., 89 Haw. 234, 238, 971 P.2d 707, 711 (1999))).

While Mr. Schoon acknowledges that, "[i]n [his]
capacity as [HVH's] principal broker, [he] owe[s] certain duties
to [his] HVH clients," [Schoon Decl. at ¶ 3,] he also states
"Zyda is not now, nor has he ever been, a client of HVH," [id.
at ¶ 4].  Zyda has not presented any admissible evidence
suggesting a special relationship exists between him and
Defendants.  There are no genuine issues of material fact, and

this Court concludes that, as a matter of law, no special relationship between Zyda and Defendants exists to permit Zyda to maintain a bad faith tort claim.

Defendants are entitled to judgment as a matter of law as to Zyda's claim in Count V. In general, Zyda's claims are representative of the Class members' claims. While the analysis of some of the Class members' bad faith tort claims could arguably have been different, there is no evidence presented which suggests there is a genuine issue of material fact as to any of the Class members being HVH clients. Defendants are thus entitled to summary judgment as to the Class members' claims in Count V.[10] In light of these rulings, it is not necessary to address the statute of limitations issue.

---

[10] Zyda's memorandum in opposition invokes Fed. R. Civ. P. 56(d). [Mem. in Opp. at 31 n.85; Revere Opp. Decl. at ¶ 3.] Rule 56(d) states:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> > (1) defer considering the motion or deny it;
> >
> > (2) allow time to obtain affidavits or declarations or to take discovery; or
> >
> > (3) issue any other appropriate order.

However, the basis of Zyda's Rule 56(d) request was the fact that the Schoon Deposition transcript was not available when the

(. . . continued)

## IV.  **Negligent Misrepresentation Claim**

The negligent misrepresentation claim in Count VI is based upon allegedly false information provided to Zyda and the Class when considering making their property purchases in the Resort.  [Third Amended Complaint at ¶¶ 35-36.]  Specifically, that they were told their renters and guests would be able to use the Resort amenities without paying additional fees.  However, the LPSA refers to the Amenity Rules, which were given at the time of purchase.  [Motion CSOF at ¶ 4; Opp. CSOF at ¶ 4; Tobin Decl., Exh. 1 (Zyda's LPSA).]  Zyda and all Resort owners signed the LPSA.  See Kildow Depo. at 189 ("Q. And they know that there is going to be renting because that was part of the deal when they bought?  A. Everybody signed the same agreement.").  The Amenity Rules state:

> Guests of Owners (including those persons who are renting an Owner's residence), may be extended guest privileges subject to these Rules,

memorandum in opposition was filed.  See Revere Opp. Decl. at ¶ 6.  The request was not based on the lack of discovery regarding whether other Class members were HVH clients.  Even if Zyda had made his Rule 56(d) request on that basis, the request would have been denied because Zyda could have obtained that information by conducting discovery prior to the filing of the memorandum in opposition.  See Pfingston v. Ronan Eng'g Co., 284 F.3d 999, 1005 (9th Cir. 2002) ("The failure to conduct discovery diligently is grounds for the denial of a Rule 56(f) motion."); Noetzel v. Hawaii Med. Serv. Ass'n, CIVIL NO. 15-00310 SOM-KJM, 2017 WL 690531, at *1 (D. Hawai`i Feb. 21, 2017) (noting that the case law regarding the prior Rule 56(f) applies to the current Rule 56(d)).

the payment of all applicable guest fees and
charges established by Management its sole
discretion, and the following specific terms and
conditions:

. . . .

(d)  Guests will be entitled to use the
Amenity Use Privileges only in accordance with
the privileges and membership of the sponsoring
Owner and upon payment of applicable guest fees.

(e)  Guest fees may be charged against the
sponsoring Owner's account with the express
consent of the sponsoring Owner.  Otherwise a
Guest must pay Guest fees in cash or with an
acceptable credit card.

. . . .

[Tobin Decl., Exh. 3 at 8-9, § 3.3.]  Zyda acknowledges that the

Amenity Rules govern his membership in the Club and his use of

the Resort amenities.  <u>See</u> Mem. in Opp. at 24 & n.71.

Even viewing the record in the light most favorable to

Zyda, the statements made at the time of his lot purchase that

guest fees would not be charged for the use of the Resort

amenities were, at most, merely a prediction that the Resort

management would not exercise its discretion to impose guest

fees in the future.  The Hawai`i Supreme Court has held that a

fraudulent misrepresentation claim

cannot be predicated on statements which are
promissory in their nature, or constitute
expressions of intention, and an actionable
representation cannot consist of mere broken
promises, unfulfilled predictions or
expectations, or erroneous conjectures as to
future events, even if there is no excuse for

> failure to keep the promise, and even though a
> party acted in reliance on such promise.

TSA Int'l Ltd. v. Shimizu Corp., 92 Hawai'i 243, 255, 990 P.2d

713, 725 (1999). This rule also applies to negligent

misrepresentation claims. See, e.g., Breast Care Ctr. of

Hawai'i LLC v. Fujifilm Med. Sys. U.S.A., Inc., CIVIL NO. 17-443

JAO-WRP, 2019 WL 2146244, at *7 (D. Hawai'i May 16, 2019).

While there is an exception to this rule – "[a]

promise relating to future action or conduct will be actionable

. . . if the promise was made without the present intent to

fulfill the promise," see Joy A. McElroy, M.D., Inc. v. Maryl

Grp., Inc., 107 Hawai'i 423, 433, 114 P.3d 929, 939 (Ct. App.

2005) (emphasis and citation omitted), Zyda fails to present any

evidence of a genuine issue of material fact as to whether the

representations allegedly made about never imposing guest fees

constituted a promise that was made without the present intent

to fulfill it. Defendants are therefore entitled to summary

judgment as to Count VI.

There are no genuine issues of material fact, and

Defendants are entitled to judgment as a matter of law as to

Zyda's claim in Count VI. Further, the analysis of the Class

members' claims is the same, and Defendants are entitled to

summary judgment as to those claims as well. In light of these

rulings, it is not necessary to address the statute of
limitations issue.

**CONCLUSION**

On the basis of the foregoing, Defendants' Motion for
Partial Summary Judgment, filed April 3, 2019, is HEREBY GRANTED
IN PART AND DENIED IN PART. The Motion is GRANTED insofar as
summary judgment is granted in Defendants' favor as to
Counts IV, V, VI, VII, and VIII. The Motion is DENIED as to the
UDAP claim in Count III. Thus, this case will proceed to trial
on the UDAP claim and the UMOC claim in Count III.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI`I, June 24, 2019.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**CHRISTOPHER ZYDA VS. FOUR SEASONS HOTELS & RESORTS, ET AL.;
CV 16-00591 LEK-RT; ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

23